Filed 4/30/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S236164 |
| v. | ) | |
| | ) | Ct.App. 6 H041615 |
| JUAQUIN GARCIA SOTO, | ) | |
| | ) | Monterey County |
| Defendant and Appellant. | ) | Super. Ct. No. SSC120180A |
| _____ | ) | |

A conviction of murder requires a finding of malice, which may be either express or implied. (Pen. Code, §§ 187, 188.)[1] Express malice requires an intent to kill "unlawfully," but implied malice does not. (§ 188.) By statute, evidence of voluntary intoxication is admissible on the issue of whether the defendant "harbored express malice." (§ 29.4. subd. (b).) We have held that if a person kills in the actual but unreasonable belief that doing so is necessary, the person does not intend to kill "unlawfully," and is guilty of voluntary manslaughter, not murder. (*In re Christian S.* (1994) 7 Cal.4th 768, 771 (*Christian S.*).)

We must decide whether section 29.4 permits evidence of voluntary intoxication on the question of whether a defendant believed it necessary to act in self-defense. Reading the statutory language in context and in light of the apparent legislative intent in enacting it, we conclude such evidence is not admissible on this question. Accordingly, CALCRIM No. 625 correctly permits

---

[1] All further statutory citations are to the Penal Code.

SEE CONCURRING AND DISSENTING OPINION

the jury to consider evidence of voluntary intoxication on the question of whether defendant intended to kill but not on the question of whether he believed he needed to act in self-defense.

## I. FACTS AND PROCEDURAL HISTORY

The Court of Appeal's opinion summarized the evidence regarding the offense. On July 10, 2012, defendant, Juaquin Garcia Soto, entered an apartment building on Oak Avenue in Greenfield, California. He briefly entered and then left Bernardino Solano's apartment. Then, "armed with a knife, [he] kicked in the front door of Israel Ramirez's apartment. Upon entering the apartment, defendant found Ramirez and his partner, Patricia Saavedra, sitting in the living room watching television. The couple's young son was also in the living room. Shortly thereafter, defendant and Ramirez engaged in a knife fight in which both parties stabbed each other multiple times. Defendant then fled the scene and Ramirez died from his wounds." (*People v. Soto* (2016) 248 Cal.App.4th 884, 887 (*Soto*).) "Police found Ramirez's body lying facedown in a pool of blood on the floor of the hallway outside the apartment." (*Id*. at p. 888.)

"At trial, Saavedra testified that defendant started the knife fight by stabbing Ramirez first." (*Soto*, *supra*, 248 Cal.App.4th at p. 887.) Her testimony was supported by evidence that a drop of blood was found on the floor several inches in front of the couch on which Ramirez was sitting. Deoxyribonucleic acid (DNA) testing of the blood showed it matched a sample of Ramirez's DNA. (*Id*. at pp. 891, 902.)

Defendant told a different version of the events. The Court of Appeal's opinion reviewed his testimony in detail: "Defendant testified in his defense as follows. He had never seen Ramirez or Saavedra before the night of the offense. In the three- or four-day period before the offense, he had been living on the street, drinking alcohol, and using methamphetamine. His state of mind 'wasn't right.'

2

Drinking alcohol and using methamphetamine over a three- or four-day period caused him to feel tired and weak. He heard voices and saw shadows.

"On July 10, he began drinking and smoking methamphetamine early in the day, and he used methamphetamine throughout the day. He was carrying a knife that he used for field work. In the evening, he went to the Oak Avenue apartment building to seek work. He had been hired by a man outside the building a few years before. At 6:30 p.m., he went upstairs to Solano's apartment. Defendant had never met Solano before. Defendant recalled knocking on the door, stepping into the apartment, and asking if anyone else was there. He did not intend to harm anyone; he was only looking for the man who had hired him before.

"After leaving Solano's apartment, defendant walked over to the next door. This time, instead of knocking on the front door, he kicked it in and saw a woman and a man inside. (In his testimony, defendant could not explain why he kicked in the door.) Defendant walked into the apartment, whereupon he saw the woman go into another room and close the door. Defendant then walked 'a little past the entryway.' Ramirez went the other way, into the kitchen. Defendant started walking out. When defendant was at the hallway area entering the living room, he saw Ramirez approaching him with a knife. Ramirez was swinging and 'jabbing' the knife.

"Defendant was scared for his life. He put up his hands and tried to defend himself. Defendant pushed Ramirez away and took out his knife, but Ramirez kept coming at him while swinging and jabbing with the knife. The two moved around, fighting each other with their knives in the hallway and in the kitchen area of the apartment. At some point, defendant pushed Ramirez away and 'took off running.' Defendant was not sure whether he or Ramirez had been stabbed inside the apartment.

3

"Defendant ran into the hallway outside the apartment, but Ramirez followed right behind him with the knife. Defendant was moving backwards and trying to block the knife while Ramirez was swinging it at him. Defendant tripped and fell backwards, and Ramirez landed on top of him. Ramirez tried to stick his knife into defendant's chest with both hands. Defendant was scared for his life. While holding Ramirez's arm with his left hand, he began stabbing Ramirez with the knife in his right hand. Defendant then felt Ramirez 'freeze up' and collapse on top of him. Defendant slid out from under Ramirez, got up, and went downstairs," after which he left the area. (*Soto*, *supra*, 248 Cal.App.4th at pp. 892-893.)

The Court of Appeal opinion also summarized the expert witness testimony defendant presented: "Dr. Amanda Gregory, a neuropsychologist, testified for defendant as an expert on methamphetamine induced psychosis. Dr. Gregory opined that defendant was suffering from a methamphetamine-induced psychotic disorder at the time of the offense. Persons suffering from this disorder experience paranoia and delusional thinking, causing them to falsely believe that others are threatening them. Furthermore, sleep deprivation caused by methamphetamine use negatively affects users' ability to process information, form judgments, and make good decisions. Methamphetamine users may also experience hallucinations, such as hearing voices or seeing things that are not there. As a result of paranoid delusions, persons suffering from a methamphetamine-induced psychotic disorder may misperceive interactions with others, perceiving threats when there are no actual threats.

"Dr. Gregory observed conduct by defendant consistent with this psychotic disorder, such as incoherent explanations and disorganized behavior. Defendant's actions on the day of the offense were consistent with her diagnosis, showing impulsiveness and poor decisionmaking. Dr. Gregory had also observed these

4

symptoms in a video of defendant being interviewed at the hospital where he appeared disoriented and incoherent at times. Dr. Gregory conceded this behavior could have been the effect of the pain medication defendant had been given." (*Soto*, *supra*, 248 Cal.App.4th at p. 893.)

Defendant was charged with first degree murder and first degree burglary, with a weapon use enhancement alleged as to both counts. He claimed he acted in self-defense. Particularly relevant here, he also claimed he was guilty of at most voluntary manslaughter because he killed in what is called unreasonable (or, as courts sometime refer to it, imperfect) self-defense; that is, he actually believed he needed to act in self-defense even if that belief was unreasonable. (*Christian S.*, *supra*, 7 Cal.4th at p. 771.)

In addition to instructions on first degree murder, the court instructed the jury on second degree murder, based on either implied or express malice, as well as on voluntary manslaughter, based on the doctrine of unreasonable self-defense. The court also instructed the jury with CALCRIM No. 625, as adapted to the case: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation, or the defendant was unconscious when he acted. Voluntary intoxication can only negate express malice, not implied malice. . . . You may not consider evidence of voluntary intoxication for any other purposes." (*Soto*, *supra*, 248 Cal.App.4th at p. 895.)

The jury acquitted defendant of first degree murder, but it found him guilty of second degree murder and first degree burglary. It also found the weapon use allegation true as to both counts. On appeal, defendant contended that the trial court erroneously prohibited the jury from considering evidence of voluntary intoxication on the question of whether he believed he needed to act in self-

5

defense. The Court of Appeal agreed: "Penal Code section 29.4 expressly allows for consideration of voluntary intoxication with respect to express malice. Because an actual but unreasonable belief in the need for self-defense negates express malice, Penal Code section 29.4 makes evidence of voluntary intoxication relevant to the state of mind required for imperfect self-defense. We therefore hold the trial court erred by precluding the jury from considering evidence of defendant's voluntary intoxication with respect to his claim of imperfect self-defense." (*Soto*, *supra*, 248 Cal.App.4th at pp. 887-888.) The court, however, also found the error harmless. (*Id*. at pp. 888, 901-905.) After rejecting defendant's other contention, the court affirmed the judgment. (*Id*. at pp. 905-907.)

We granted both parties' petitions for review and limited the issues to whether the trial court erred in giving CALCRIM No. 625 and, if so, whether the error was prejudicial.

## II. DISCUSSION

The legal principles underlying the issue before us are well settled. "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) "Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188.)

Section 188's "abandoned and malignant heart" language is of little assistance in defining the concept of implied malice, so it requires judicial interpretation. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) "We have interpreted implied malice as having 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural

6

consequences of which are dangerous to life." (*People v. Watson* (1981) 30 Cal.3d 290, 300.) The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . acts with conscious disregard for life." (*Ibid*., internal quotation marks omitted.)' " (*Ibid*.)

Voluntary "[m]anslaughter, a lesser included offense of murder, is an unlawful killing without malice. . . . Two factors may preclude the formation of malice and reduce murder to voluntary manslaughter: heat of passion and unreasonable self-defense." (*People v. Elmore* (2014) 59 Cal.4th 121, 133.)

"Self-defense, when based on a *reasonable* belief that killing is necessary to avert an imminent threat of death or great bodily injury, is a complete justification, and such a killing is not a crime. [Citations.] A killing committed when that belief is *unreasonable* is not justifiable. Nevertheless, 'one who holds an honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury does not harbor malice and commits no greater offense than manslaughter.' " (*People v. Elmore*, *supra*, 58 Cal.4th at pp. 133-134.)

" ' "A person who actually believes in the need for self-defense necessarily believes he is acting lawfully." [Citation.] Because express malice requires an intent to kill unlawfully, a killing in the belief that one is acting lawfully is not malicious. The statutory definition of implied malice does not contain similar language, but we have extended the imperfect self-defense rationale to any killing that would otherwise have malice, whether express or implied.' (*People v. Anderson* [(2002) 28 Cal.4th 767,] 782.) 'A defendant who acts with the requisite actual belief in the necessity for self-defense does not act with the base motive required for implied malice . . . .' (*Christian S.*, *supra*, 7 Cal.4th at p. 780, fn. 4.)" (*People v. Elmore*, *supra*, 58 Cal.4th at p. 134, fn. omitted.)

7

Defendant relied on this doctrine of unreasonable self-defense at trial. He argues that, by giving CALCRIM No. 625, the trial court improperly limited the jury's consideration of his evidence of voluntary intoxication to the question of whether he intended to kill, and erred in prohibiting the jury from considering the evidence on the question of whether he actually believed he needed to act in self-defense. The contention requires us to interpret section 29.4.[2]

Section 29.4, subdivision (a), provides as relevant: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition." Subdivision (b) of that section contains a limited exception to this rule. It provides: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, *or harbored express malice aforethought*." (Italics added.)

Because express malice requires an intent to kill "unlawfully" (§ 188), defendant argues the Court of Appeal was correct when it held that section 29.4 permits evidence of voluntary intoxication on the question of whether he actually believed in the need for self-defense, that is, whether he intended to kill *unlawfully*.

Defendant's reading of section 29.4 is facially plausible, but it is not the only possible reading of the statutory language. By its terms, subdivision (b) permits evidence of voluntary intoxication "solely" on the question of whether the defendant "formed a required specific intent," "premeditated," "deliberated," or

---

[2]    At the time of the offense, section 29.4 was former section 22. (Stats. 1995, ch. 793, § 1, pp. 6149-6150.) In 2012, former section 22 was renumbered section 29.4 without substantive change. (Stats. 2012, ch. 162, § 119.) Except when specifically discussing former section 22, we will refer to the statute by its current number.

8

"harbored express malice aforethought."  Because harbored *implied* malice does not appear in this enumerated list, section 29.4 prohibits the use of evidence of voluntary intoxication to establish that a defendant acted without implied malice. (*People v. Timms* (2007) 151 Cal.App.4th 1292, 1298; *People v. Martin* (2000) 78 Cal.App.4th 1107, 1114; see *Howard Jarvis Taxpayers Assn. v. Padilla* (2016) 62 Cal.4th 486, 514 [under the *expressio unius est exclusio alterius* canon of construction, "the explicit mention of some things in a text may imply other matters not similarly addressed are excluded"].)

The primary difference between express malice and implied malice is that the former requires an intent to kill but the latter does not.  (*People v. Saille* (1991) 54 Cal.3d 1103, 1115.)  And reading the reference to express malice in context, it is apparent the Legislature was particularly concerned with this "required specific intent" (§ 29.4, subd. (b)) component of express malice.  (See *People v. Prunty* (2015) 62 Cal.4th 59, 73 [citing the *noscitur a sociis* canon of construction, meaning "a word literally 'is known by its associates.' "].)  By contrast, the absence of a belief that the killing was necessary for self-defense is not a "required specific intent."  Nor is it a matter unique to cases of express malice; the absence of such a belief is equally relevant in cases of implied malice, which are excluded from the reach of section 29.4.

The text, in short, does not clearly support defendant's proposed reading of section 29.4.  We therefore turn to the history of former section 22.  In *People v. Whitfield* (1994) 7 Cal.4th 437 (*Whitfield*), we concluded that former section 22, before it was amended in 1995, "was not intended, in murder prosecutions, to preclude consideration of evidence of voluntary intoxication on the issue whether a defendant harbored malice aforethought, whether the prosecution proceeds on a theory that malice was express or implied."  (*Id*. at p. 451; see *People v. Mendoza* (1998) 18 Cal.4th 1114, 1125.)  "Justice Mosk, joined by Chief Justice Lucas and,

9

in a separate opinion, Justice Baxter, would have found voluntary intoxication not admissible to negate implied malice. [Citations.] The most recent amendment to [former] section 22 [before its renumbering as section 29.4] came in apparent reaction to this holding. The Legislative Counsel's Digest to the bill amending [former] section 22 stated: 'Under existing law, as held by the California Supreme Court in People v. Whitfield, 7 Cal.4th 437, [evidence of voluntary intoxication was admissible] even where the prosecution relies on a theory of implied malice. [¶] This bill would provide, instead, that evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought.' (Legis. Counsel's Dig., Sen. Bill No. 121 (1995-1996 Reg. Sess.).)" (*Mendoza*, at pp. 1125-1126.)

In *Whitfield*, Justice Mosk argued that " '[g]eneral intent' and 'specific intent' are shorthand devices best and most precisely invoked to contrast offenses that, as a matter of policy, may be punished despite the actor's voluntary intoxication (general intent) with offenses that, also as a matter of policy, may not be punished in light of such intoxication if it negates the offense's mental element (specific intent). (*People v. Hood* (1969) 1 Cal.3d 444, 455-458 [82 Cal.Rptr. 618, 462 P.2d 370].) Evidence of voluntary intoxication may be introduced to negate an element of offenses requiring relatively complex cogitation—a mental function integral to many crimes that contain a 'definition [that] refers to defendant's intent to do some further act or achieve some additional consequence . . .' (see *id*. at p. 457)—because alcohol can interfere with such intent (*id*. at p. 458)." (*Whitfield*, *supra*, 7 Cal.4th at p. 463 (conc. & dis. opn. of Mosk, J.).)

Just as voluntary intoxication cannot exculpate assault with a deadly weapon (*People v. Rocha* (1971) 3 Cal.3d 893), Justice Mosk argued, it cannot

10

exculpate "implied-malice murder: alcohol intoxication naturally lends itself to the crime's commission because it *impairs the sound judgment* or lowers the inhibitions that might stop a sober individual from committing a highly dangerous act leading to another's death." (*Whitfield*, *supra*, 7 Cal.4th at p. 463 (conc. & dis. opn. of Mosk, J.), italics added.) "The key is whether policy considerations permit the introduction of voluntary intoxication evidence to negate an element of the crime." (*Ibid.*)

When the Legislature amended former section 22 in 1995, it overruled *Whitfield* and adopted Justice Mosk's position that evidence of voluntary intoxication is not admissible on the question of implied malice, that is, to prove that defendants did not know of the danger they were creating by their actions, or that they did not consciously disregard that danger. Indeed, some of the legislative history behind the amendment refer to his dissenting opinion with approval. (E.g., Assem. Com. on Public Safety, Rep. on Sen. Bill No. 121 (1995-1996 Reg. Sess.) as amended Apr. 3, 1995, pp. 3-4.)

Justice Mosk's reasoning in *Whitfield* strongly supports the conclusion that section 29.4 does not permit evidence of voluntary intoxication on the question of whether the defendant believed it was necessary to act in self-defense. Unlike the mental state of intent to kill, a belief that it is necessary to kill in self-defense does not involve the " 'intent to do some further act or achieve some additional consequence.' " (*Whitfield*, *supra*, 7 Cal.4th at p. 463 (conc. & dis. opn. of Mosk, J.).) Rather, it involves *judgment*. Intoxication can distort a person's perception of the unfolding circumstances, and thereby impair the sound judgment that is needed when deciding to use lethal force in self-defense. Accordingly, voluntary "intoxication naturally lends itself to the crime's commission because it impairs the sound judgment or lowers the inhibitions that might stop a sober individual" from killing a perceived assailant. (*Ibid.*) The mental state for unreasonable self-

11

defense is precisely what Justice Mosk argued voluntary intoxication should not negate.

By prohibiting evidence of voluntary intoxication to negate *implied* malice, the Legislature apparently agreed with Justice Mosk that a defendant who acts with conscious disregard for life should be punished for murder regardless of whether voluntary intoxication impaired his or her judgment. Therefore, as the Court of Appeal seemed to acknowledge, section 29.4 prohibits evidence of voluntary intoxication to prove that defendant did not harbor implied malice for another reason—because he actually but unreasonably believed in the need to act in self-defense.

The question here is whether the Legislature intended a different result in cases of unreasonable self-defense when used to negate *express* malice. The statutory background reveals no such purpose. Justice Mosk's reasoning applies to unreasonable self-defense when it negates express malice, too. A belief that it is necessary to kill in self-defense is still a *judgment* that voluntary intoxication will impair, whether used to negate implied or express malice. And the statutory text bears out this conclusion:

The inclusion of both "specific intent" and "express malice" in section 29.4, subdivision (b), suggests that the statute is best understood as not allowing evidence of voluntary intoxication to establish unreasonable self-defense and negate the unlawful aspect of express malice murder. Moreover, a different conclusion would give a stronger case for unreasonable self-defense to those who act with express malice than to those who act with implied malice. A person who acted with implied malice, for example, who intended to injure seriously but not specifically to kill, could not rely on evidence of voluntary intoxication to negate malice under an unreasonable self-defense theory. But under defendant's interpretation, a person who intended to kill *could* do so. That interpretation

would place a person who intended to kill in a better legal position (i.e., a possible conviction of voluntary manslaughter) than one who intended to injure seriously. In light of the evidence that the Legislature did not intend to allow voluntary intoxication evidence on unreasonable self-defense, we doubt the Legislature intended differing applications of unreasonable self-defense for express and implied malice.

As defendant argues, nothing in the legislative history indicates the Legislature specifically considered the unreasonable self-defense doctrine. This circumstance is not surprising. The doctrine is rather esoteric. But it is clear what the Legislature intended to achieve when it amended former section 22: to prohibit voluntary intoxication from being an excuse for poor judgment when someone kills. In effect, Justice Mosk's dissent in *Whitfield*, and the Legislature in adopting that dissent, say to a criminal defendant, "If you voluntarily choose to become intoxicated and then kill someone, you may not claim that you were so intoxicated you were unaware your actions exhibited a conscious disregard for life when you killed, although you may claim you were too intoxicated to intend to kill or premeditate or—for purposes of the felony-murder rule—have the specific intent to commit the underlying felony." Similarly, that dissent, and the Legislature, *also* say to a criminal defendant, "If you voluntarily choose to become intoxicated and then kill someone, you may not claim that you were so intoxicated you were unaware your victim posed no threat to you when you killed, although you may claim you were too intoxicated to intend to kill or premeditate or have the specific intent to commit some other felony."

Relying on *People v. Mendoza*, *supra*, 18 Cal.4th 1114—which considered how former section 22, as amended in 1995 (i.e., substantially today's section 29.4), related to the mental state required of an aider and abettor—defendant also argues that the belief it is necessary to act in self-defense is a "required specific

13

intent" under section 29.4. We rejected a similar argument in *People v. Atkins* (2001) 25 Cal.4th 76, where we held that evidence of voluntary intoxication cannot negate the mental state required for arson. "In *Mendoza*, we held that the mental state for aider and abettor liability, which has intent and knowledge components, is a 'required specific intent' for purposes of [former] section 22, subdivision (b). (*People v. Mendoza*, *supra*, 18 Cal.4th at p. 1131.) An aider and abettor must ' "act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." ' (*Id.* at p. 1123, original italics.) Although we concluded that the intent requirement for an aider and abettor fit the *Hood* definition of specific intent [*People v. Hood*, *supra*, 1 Cal.3d 444], we also recognized that knowledge did not expressly fall within [former] section 22. (*Mendoza*, at pp. 1129, 1131.)

"*Mendoza* does not support defendant's position. An aider and abettor must *intend* not only the act of encouraging and facilitating, but also the *additional criminal act* the perpetrator commits. (*People v. Mendoza*, *supra*, 18 Cal.4th at p. 1129.) Because the knowledge requirement was intimately entwined with intent, we concluded that it ' "is closely akin to *Hood*'s definition of specific intent." ' (*Id.* at p. 1131.) On the other hand, the definition of arson does not refer to defendant's intent to do some further act or achieve some additional consequence. Moreover, our holding in *Mendoza* 'is very narrow,' limited to admission of evidence of intoxication solely on the question of aider and abettor liability. (*Id.* at p. 1133.)" (*People v. Atkins*, *supra*, 25 Cal.4th at pp. 92-93.)

Similarly, *Mendoza's* narrow holding does not apply here. As we have explained, the mental state of believing it is necessary to act in self-defense does not involve the "intent to do some further act or achieve some additional

14

consequence." (*People v. Atkins*, *supra*, 25 Cal.4th at p. 93.)  It is not a required specific intent under section 29.4.

Amici curiae California Public Defenders Association and Santa Clara County Public Defender argue that the rule of lenity, "whereby courts must resolve doubts as to the meaning of a statute in a criminal defendant's favor" (*People v. Avery* (2002) 27 Cal.4th 49, 57), requires this court to interpret section 29.4 in defendant's favor.  Even assuming the rule applies to a statute, like section 29.4, that only regulates the extent to which evidence of voluntary intoxication may negate a required mental state, we disagree.  "[T]he rule applies only when two reasonable interpretations of a penal statute stand in relative equipoise. '[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent.' " (*People ex rel. Green v. Grewal* (2015) 61 Cal.4th 544, 565.)  Here, we can fairly discern a legislative intent not to permit evidence of voluntary intoxication to support a claim of unreasonable self-defense.

Additionally, the same amici curiae argue that limiting admission of evidence of voluntary intoxication in this way would violate a criminal defendant's due process rights because the prosecution has the burden of proving all elements of a crime beyond a reasonable doubt.  This argument would prevent the Legislature from placing *any* limits on the use of voluntary intoxication to negate a mental state of a crime.  The same argument, for example, would apply to section 29.4's prohibition of admission of evidence of voluntary intoxication on the issue of implied malice.  The prosecution certainly does have the burden of proving all elements of a crime beyond a reasonable doubt.  But that does not prohibit the Legislature from making policy judgments regarding when evidence of voluntary intoxication may, and when it may not, be admitted to negate a required mental state.

15

In *Montana v. Egelhoff* (1996) 518 U.S. 37, the United States Supreme Court upheld against a due process attack a Montana statute providing "that voluntary intoxication 'may not be taken into consideration in determining the existence of a mental state which is an element of [a criminal] offense.' " (*Id.* at pp. 39-40.) In *People v. Atkins*, *supra*, 25 Cal.4th at page 93, we cited *Egelhoff* in rejecting the "defendant's argument that the withholding of voluntary intoxication evidence to negate the mental state of arson violates his due process rights by denying him the opportunity to prove he did not possess the required mental state." We reach a similar conclusion here.

This court has not considered a due process challenge to section 29.4. Three Courts of Appeal have done so and, relying primarily on *Montana v. Egelhoff*, *supra*, 518 U.S. 37, each upheld the statute. (*People v. Carlson* (2011) 200 Cal.App.4th 695, 707-708; *People v. Timms*, *supra*, 151 Cal.App.4th at pp. 1298-1301; *People v. Martin*, *supra*, 78 Cal.App.4th at pp. 1115-1117.) The most recent of these opinions provides a good summary of why the courts have upheld section 29.4:

"*Montana v. Egelhoff*[, *supra*,] 518 U.S. 37 rejected the claim of a defendant convicted of purposely or knowingly causing the death of a person that he was denied federal due process by a state law that barred consideration of voluntary intoxication ' "in determining the existence of a mental state which is an element of [a criminal] offense." ' (*Id.* at p. 40.) Four justices concurred in an opinion holding the rule that 'intoxication may be considered on the question of intent . . . was [not] so deeply rooted . . . as to be a fundamental principle which th[e] Fourteenth] Amendment [has] enshrined.' (*Id.* at p. 48.) Justice Ginsburg concurred in upholding the statute. Declaring ' "[a] state legislature certainly has the authority to identify the elements of the offenses it wishes to punish," . . . and to exclude evidence irrelevant to the crime it has defined' (*id.* at p. 57 (conc. opn.

16

of Ginsburg, J.), citation omitted), she distinguished between invalid laws 'designed to keep out "relevant, exculpatory evidence" ' (*ibid.* (conc. opn. of Ginsburg, J.)) and valid laws that merely 'redefin[e] . . . the mental-state element of the offense' (*ibid.* (conc. opn. of Ginsburg, J.)), and concluded the Montana statute fell into the latter category (*id.* at pp. 57-59 (conc. opn. of Ginsburg, J.)).

"California appellate courts have followed *Egelhoff* in upholding the current version of [former] section 22 [i.e., the substance of section 29.4] against due process attacks. *People v. Martin*, *supra*, 78 Cal.App.4th 1107 stated, 'The 1995 amendment to [former] section 22 results from a legislative determination that, for reasons of public policy, evidence of voluntary intoxication to negate culpability shall be strictly limited,' and 'nothing in the enactment . . . deprives a defendant of the ability to present a defense or relieves the People of their burden to prove every element of the crime charged beyond a reasonable doubt . . . .' (*Id.* at p. 1117.) *People v. Timms*, *supra*, 151 Cal.App.4th 1292, declared, 'Like the Montana statute, the California Legislature could also exclude evidence of voluntary intoxication in determination of the requisite mental state. [¶] . . . In short, voluntary intoxication is irrelevant to proof of the mental state of implied malice or conscious disregard. Therefore, it does not lessen the prosecution's burden of proof or prevent a defendant from presenting all relevant defensive evidence.' (*Id.* at pp. 1300-1301.)" (*People v. Carlson*, *supra*, 200 Cal.App.4th at pp. 707-708.)

We agree with these cases. The Legislature has decided, for policy reasons, that evidence of voluntary intoxication is irrelevant to proof of certain mental states. The Legislature may validly make that policy decision.

For these reasons, we conclude the trial court correctly instructed the jury on how it could consider defendant's evidence of voluntary intoxication.

### III. CONCLUSION

Although the Court of Appeal incorrectly found error, it found that error harmless and affirmed the judgment.  Therefore, it reached the correct result.  Accordingly, we affirm the judgment of the Court of Appeal.  We also disapprove the Court of Appeal's opinion to the extent it is inconsistent with this opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C.J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

**CONCURRING AND DISSENTING OPINION BY LIU, J.**

Penal Code section 29.4, subdivision (b) (section 29.4(b)) says: "Evidence of voluntary intoxication is admissible . . . on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or *harbored express malice aforethought*." (Italics added; all statutory references are to the Penal Code.) Because express malice requires the intent to kill "unlawfully" (§ 188), " 'one who holds an honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury does not harbor malice' " (*People v. Elmore* (2014) 59 Cal.4th 121, 134). Thus, evidence of defendant Juaquin Garcia Soto's voluntary intoxication was admissible to show whether he intentionally killed Israel Ramirez under the honest but unreasonable belief that he needed to act in self-defense.

Today's opinion rejects this straightforward reading of section 29.4(b) and instead relies heavily on the statute's enactment history. But the history does not bear the weight the court assigns to it, and in any event, "[w]here statutory text 'is unambiguous and provides a clear answer, we need go no further.' " (*Scher v. Burke* (2017) 3 Cal.5th 136, 148.) We should only " 'reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results.' " (*Baker v. Workers' Comp. Appeals Bd.* (2011) 52 Cal.4th 434, 442 (*Baker*).)

The court does not claim that the text of section 29.4(b) is ambiguous, that giving effect to its plain meaning would lead to absurd results, or that a contrary legislative intent is "apparent *in the statute*." (*Baker*, *supra*, 52 Cal.4th at p. 442, italics added.)  Notwithstanding the court's policy views on whether evidence of voluntary intoxication should be admissible on matters of "judgment" as opposed to " 'complex cogitation' " (maj. opn., *ante*, at pp. 10–11), there is no basis for us to carve out an exception from section 29.4(b) where none exists.  Section 29.4(b) says "[e]vidence of voluntary intoxication is admissible . . . on the issue of whether or not the defendant . . . when charged with murder . . . harbored express malice aforethought."  I would apply the statute in accordance with its plain meaning and hold that evidence of voluntary intoxication is admissible on the issue of unreasonable self-defense when it negates express malice.

**I.**

In interpreting a statute, we give the text "its usual, ordinary import and accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.)  "If the statutory language is not clear, a court may resort to extrinsic sources, like legislative history." (*926 North Ardmore Avenue, LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328.)  But " ' " '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to [extrinsic] indicia of the intent of the Legislature . . . .' " ' " (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 419.)

As noted, the court does not ever say the text of section 29.4(b) is ambiguous.  To the extent it examines the text at all, the court says the Legislature intended to refer only to the " 'required specific intent' [citation] component of express malice" because the statute earlier mentions "specific intent." (Maj. opn., *ante*, at p. 9 [relying on the *noscitur a sociis* canon of construction].)  This is a

2

weak argument. Although the first part of section 29.4(b) says evidence of voluntary intoxication is admissible on "whether or not a defendant actually formed a required specific intent," the second part of the provision — which follows the disjunctive "or" — identifies a distinct set of issues on which such evidence is admissible when the defendant has been charged with murder, i.e., "whether the defendant premeditated, deliberated, or harbored express malice aforethought." The statute sets forth with separateness and particularity the issues on which evidence of voluntary intoxication is admissible when the defendant is charged with murder; it does not treat those issues as a species or subset of "whether or not the defendant actually formed a required specific intent." If the court were correct that section 29.4(b) applies only to the "specific intent" component and not the "unlawful" component of express malice, the Legislature would have had no need to identify a particular set of issues — separate from "whether or not the defendant actually formed a required specific intent" — on which evidence of voluntary intoxication is admissible when a defendant is charged with murder. (See *McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110 ["A construction making some words surplusage is to be avoided."].)

The court's main contention is that the Legislature, when it amended the statute in 1995 to overrule *Whitfield*, adopted the reasoning in Justice Mosk's separate opinion in *Whitfield*. Justice Mosk opined that evidence of voluntary intoxication should not be allowed to negate implied malice because "it impairs the sound judgment or lowers the inhibitions that might stop a sober individual from committing a highly dangerous act leading to another's death." (*Whitfield*, *supra*, 7 Cal.4th at p. 463 (conc. & dis. opn. of Mosk, J.).) So too, the court argues, such evidence should not be allowed on the issue of unreasonable self-defense to negate express malice because it can "impair the sound judgment that is

3

needed when deciding to use lethal force in self-defense." (Maj. opn., *ante*, at p. 11.)

The court makes a perfectly good policy argument. But it offers no evidence that the Legislature, in overruling *Whitfield*, intended to extend Justice Mosk's reasoning to a claim of unreasonable self-defense to negate express malice. *Whitfield* only concerned the admissibility of voluntary intoxication to negate implied malice. The defendant in *Whitfield* argued that due to his intoxication, he was essentially unconscious and therefore did not actually harbor a conscious disregard of life when he drove his car and caused a fatal accident. (*Whitfield*, *supra*, 7 Cal.4th at p. 443.) Because *Whitfield* had nothing to do with express malice, the Legislature's overruling of that case does not indicate any intent to alter the rule of admissibility on the issue of express malice.

Even if the Legislature intended to adopt Justice Mosk's views in *Whitfield*, it is clear that he, like the majority in *Whitfield*, was focused on "whether evidence of voluntary intoxication is relevant to negate implied malice aforethought, specifically its subjective component of conscious and antisocial disregard for human life." (*Whitfield*, *supra*, 7 Cal.4th at p. 459 (conc. & dis. opn. of Mosk, J.).) The court says a person who unreasonably believes another person poses a mortal threat has committed an error in judgment of the same type that, under Justice Mosk's reasoning, should not be negated by voluntary intoxication. Again, that is a fine policy argument. But nothing in *Whitfield* or section 29.4(b)'s history mentions unreasonable self-defense. Although the court says this is "not surprising" given the "esoteric" nature of the doctrine (maj. opn., *ante*, at p. 13), the fact is that unreasonable self-defense is of longstanding vintage in California (*In re Christian S.* (1994) 7 Cal.4th 768, 776–778 [tracing the doctrine to 1936 case law]), and we do not infer an intent by the Legislature to change the law "by implication" (*id.* at p. 776).

4

In sum, it is not "clear" from the legislative history that the Legislature broadly intended "to prohibit voluntary intoxication from being an excuse for poor judgment when someone kills." (Maj. opn., *ante*, at p. 13.) What *is* clear is that the text of section 29.4(b) makes evidence of voluntary intoxication admissible on the issue of whether a defendant charged with murder "harbored express malice aforethought" and sets forth no exceptions.

The court offers one more argument for today's holding: "[A] different conclusion would give a stronger case for unreasonable self-defense to those who act with express malice than those who act with implied malice." (Maj. opn., *ante*, at p. 12.) Although the court thinks this would be bad policy, the court does not say it would be irrational or absurd. Indeed, there is a rational basis for treating implied malice differently from express malice in this context: In amending section 29.4 to overrule *Whitfield*, "the Legislature deemed it confusing, in a vehicular homicide case, to allow evidence of voluntary intoxication to aggravate as well as to mitigate the offense." (*People v. Timms* (2007) 151 Cal.App.4th 1292, 1302; see *ibid.* [rejecting claim that the statute violates equal protection "because it applies different rules to defendants accused of killing with implied malice than it applies to those accused of killing with express malice"].) We routinely decline to second-guess the Legislature's policy judgments in defining degrees of culpability and punishment, even where the penal scheme arguably punishes a "lesser crime" more harshly than a "greater crime." (*People v. Turnage* (2012) 55 Cal.4th 62, 78; see *People v. Wilkinson* (2004) 33 Cal.4th 821, 840.) Notwithstanding the court's own views of fairness, there is no absurd consequence that justifies a refusal to give effect to section 29.4(b)'s plain meaning.

## II.

Today's opinion goes on to reject the claim advanced by various public defenders as amici curiae that section 29.4 violates a criminal defendant's due

process rights under the California Constitution or the United States Constitution. (Maj. opn., *ante*, at pp. 15–17.)  I would not decide this issue because Soto does not straightforwardly raise it, we did not grant review to decide it, and, as explained further below, the trial court's ruling barring evidence of voluntary intoxication on Soto's claim of unreasonable self-defense was harmless under any standard.  But I would note that the court's analysis of this issue derogates from the principle that "the California Constitution is, and always has been, 'a document of independent force' (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 325) that sets forth rights that are in no way 'dependent on those guaranteed by the United States Constitution' (Cal. Const., art. I, § 24)." (*People v. Buza* (2018) 4 Cal.5th __, __ [2018 WL 1570366, p. *14]; see *id.* at p. __ [at p. *24] (dis. opn. of Liu, J.); *id.* at p. __ [at p. *28] (dis. opn. of Cuéllar, J.); *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 352–355.)

The court relies on *Montana v. Egelhoff* (1996) 518 U.S. 37 (*Egelhoff*) and on Court of Appeal decisions that have applied *Egelhoff* to reject due process challenges to section 29.4(b).  *Egelhoff* was a 5-4 decision with no reasoning garnering a majority.  Four justices in *Egelhoff* opined that a state evidentiary rule barring consideration of voluntary intoxication in the determination of criminal mens rea does not contravene any uniform state practice or longstanding tradition and therefore does not violate the federal due process clause.  (*Egelhoff*, at p. 51 (plur. opn.).)  Justice Ginsburg, casting a fifth vote to uphold the statute, characterized the state rule as "a redefinition of the mental-state element of the offense," not as "an evidentiary prescription," and opined that "[s]tates enjoy wide latitude in defining the elements of criminal offenses . . . ."  (*Id.* at pp. 57, 58 (conc. opn. of Ginsburg, J.).)

There is nothing wrong with deciding, in our independent judgment, to adopt the reasoning of a federal precedent as a matter of state constitutional law.

But here the court simply says it "agree[s]" with appellate decisions that have relied on *Egelhoff* to uphold section 29.4(b). (Maj. opn., *ante*, at p. 17.) What exactly is the court's reasoning? Because *Egelhoff* is a ruling with no majority opinion, shouldn't the court at least explain, in its independent judgment, whether it is following the four-justice plurality in treating section 29.4(b) as an evidentiary rule or Justice Ginsburg's concurrence in treating section 29.4(b) as a substantive definition of criminal offenses? Perhaps we can infer, although it is not clear, that the court is treating section 29.4(b) as an evidentiary rule. (Maj. opn., *ante*, at pp. 16–17.) If that is so, then shouldn't the court explain why, in its independent judgment, it finds the four-justice plurality in *Egelhoff* more persuasive than the four-justice dissent? (See *Egelhoff*, *supra*, 518 U.S. at p. 61 (dis. opn. of O'Connor, J.).) Today's opinion lacks any independent reasoning in support of its due process holding under state law.

This omission is especially notable because the reasoning of the *Egelhoff* plurality does not lend itself to straightforward adoption as a matter of state law. The doctrinal test for a federal due process violation in this context is deeply informed by federalism concerns: " '[P]reventing and dealing with crime is much more the business of the States than it is of the Federal Government, and . . . we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally "within the power of the State to regulate procedures under which its laws are carried out," . . . and its decision in this regard is not subject to proscription under the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." ' " (*Egelhoff*, *supra*, 518 U.S. at p. 43 (plur. opn.).) Under this test, the fact of state variation is *in and of itself* a key determinant of the due process

inquiry.  (See *id.* at p. 48 [state rule does not have " 'fundamental principle' status" if it does not have "uniform and continuing acceptance" in other states].)

But there is no similar federalism concern when a state court reviews a state statute under the state constitution.  (See *Arizona v. Evans* (1995) 514 U.S. 1, 30–31 (dis. opn. of Ginsburg, J.) ["[The high court] is reluctant to intrude too deeply into areas traditionally regulated by the States.  This aspect of federalism does not touch or concern state courts interpreting state law."].)  Variation among states may signal the strength or weakness of substantive justifications for the evidentiary rule at issue and, for that reason, may inform the state due process inquiry.  But the fact of state variation does not *in and of itself* have any bearing on the state constitutional analysis.  The state law analysis must instead grapple with the basic fairness or unfairness of the evidentiary rule, an issue on which the four-justice plurality and four-justice dissent in *Egelhoff* vigorously disagreed.  (Compare *Egelhoff*, *supra*, 518 U.S. at pp. 49–55 (plur. opn.) [due process permits restrictions on relevant evidence for valid reasons, and state rule barring intoxication evidence deters irresponsible behavior, comports with the moral perception that one who voluntarily impairs his faculties is responsible for the consequences, and excludes misleading evidence from the jury] with *id.* at pp. 61–68 (dis. opn. of O'Connor, J.) [state rule barring intoxication evidence denies a criminal defendant a fair opportunity to present a defense and relieves the prosecution of its burden to prove every element of the crime beyond a reasonable doubt].)  Today's opinion grapples with none of this.

In sum, the court's endorsement of *Egelhoff*'s result, unaccompanied by any evaluation of the high court's split reasoning or any other independent analysis of the issue, does not give due regard to the independent force and effect of rights guaranteed by our state constitution.

8

## III.

Although the trial court erred in excluding evidence of Soto's voluntary intoxication, I concur in today's judgment because the exclusion was harmless under any standard of prejudice, whether the jury believed the prosecution's or Soto's version of events. (See *People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.) According to the prosecution, Soto attacked Ramirez with a knife when Ramirez was sitting on his couch, after which Ramirez retrieved a knife from his kitchen and engaged Soto. The fight spilled out into the hallway outside Ramirez's apartment, where Soto ultimately killed Ramirez. On this version, the jury would have concluded that Soto was the initial aggressor and not entitled to claim self-defense.

According to Soto, Ramirez went to the kitchen when Soto entered the apartment. Soto turned to leave but saw Ramirez come at him with a 10-inch knife. The two started fighting, but at some point, Soto sought to withdraw from the altercation by leaving the apartment. As he headed down the hallway outside the apartment, he sensed Ramirez come after him and turned around and re-engaged him. Soto then fell; as Ramirez continued to attack him, Soto stabbed wildly until Ramirez went still. On this version, Ramirez's killing would have been entirely justified. If Ramirez was the initial aggressor or Soto properly withdrew, then Soto was entitled to defend himself when he saw Ramirez come at him with a 10-inch knife; it would have been reasonable for Soto to believe he was in mortal danger. There is no place for *unreasonable* self-defense — only *reasonable* self-defense, which the jury rejected by convicting Soto of murder.

Soto posits that unreasonable self-defense could have been a plausible theory if, after Ramirez re-engaged Soto in the hallway, Soto successfully neutralized Ramirez without killing him but, due to his intoxication, failed to realize that Ramirez was no longer a threat and continued attacking him until he

9

died.  But there is no evidence that Ramirez had been disabled at some point before the fatal blow in a manner that a sober and reasonable person in the same circumstances would have recognized.  Indeed, Soto's own testimony indicated that he was stabbing wildly to get Ramirez off of him until Ramirez went limp.

Because there is no reasonable possibility that the jury would have returned a different verdict if evidence of Soto's intoxication had been admitted, I concur in today's affirmance of the judgment.

**LIU, J.**


**I CONCUR:**

**THOMPSON, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Soto

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 248 Cal.App.5th 884
**Rehearing Granted**

_____

**Opinion No.** S236164
**Date Filed:** April 30, 2018

_____

**Court:** Superior
**County:** Monterey
**Judge:** Carrie McIntyre Panetta

_____

**Counsel:**

Stephen B. Bedrick, under appointment by the Supreme Court, for Defendant and Appellant.

Molly O'Neal, Public Defender (Santa Clara), and Michael Ogul, Deputy Public Defender, for California Public Defenders Association and Santa Clara County Public Defenders as Amici Curiae on behalf of Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Seth K. Schalit, Kevin Kiley and Amit Kurlekar, Deputy Attorneys General, for Plaintiff and Respondent.

Keiter Appellate Law and Mitchell Keiter for Senator Ray Haynes as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Stephen B. Bedrick
1970 Broadway, Suite 1200
Oakland, CA  94612
(510) 452-1900

Amit Kurlekar
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5559