Filed 9/25/20  P. v. Bitson CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MORGAN BITSON,<br><br>    Defendant and Appellant. | B301565<br><br>(Los Angeles County<br>Super. Ct. No. BA434959) |

APPEAL from an order of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Affirmed.

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

Penal Code[1] section 1170.95 creates a procedure permitting defendants who previously were convicted of murder, but who no longer could be convicted because of recent changes in the law, to petition the trial court to vacate the murder conviction and to be resentenced.  (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137.)  To be eligible for resentencing under section 1170.95, a petitioner must present a prima facie case that, among other things, the petitioner could no longer be convicted of murder under the new law.  (*Ibid*.)  Under the new law, a murder conviction cannot stand on the natural and probable consequences doctrine.  (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted July 15, 2020, S262459.)  Instead, malice must be proven.  (*Ibid*.)  The mental state for express malice is intent to kill.  (*People v. Soto* (2018) 4 Cal.5th 968, 974.)  The mental state for implied malice occurs when a defendant knows his conduct endangers another and acts with conscious disregard for life.  (*Ibid*.)

In this case, Morgan Bitson and her boyfriend Tristan Bennett killed Bitson's four-year-old son.  Jurors convicted Bitson of multiple crimes including second degree murder.  This court previously affirmed the judgment.  In June 2019, Bitson filed a petition under section 1170.95 to vacate her murder conviction.  The trial court found that she failed to demonstrate a prima facie case entitling her to relief and denied her petition.  Bitson appeals from the order denying her petition for resentencing on her murder conviction under section 1170.95.

We agree that Bitson failed to demonstrate a prima facie case of eligibility for relief.  The record demonstrates as a matter

---

[1]  Undesignated statutory citations are to the Penal Code.

2

of law, that Bitson acted with malice.  We reject Bitson's remaining arguments because they are beyond the scope of the current appeal, which is limited to her petition for resentencing pursuant to section 1170.95.  We affirm the trial court's order denying Bitson's section 1170.95 petition.

## BACKGROUND

**1.    *Bitson and Bennett Kill Bitson's Four-Year-Old Son***

The following background is taken from this court's decision following Bitson's appeal from the judgment of conviction.

"Defendants Morgan Bitson and her boyfriend Tristian Bennett killed Bitson's four-year-old son Major Woods.  The fatal blow severed Woods's liver in two, causing him to bleed profusely.  Prior to that time, defendants inflicted many additional wounds on Woods.  While in their care, Woods suffered broken ribs, burn marks, bruises, a broken arm, and the loss of vision.  Defendants restricted Woods's food, causing him to suffer from hunger and chronic stress and to lose muscle tissue.  Although the evidence did not show if Bitson or Bennett inflicted the fatal blow, the overwhelming evidence demonstrated that both abused him; one or both inflicted the fatal wound; and both lied about the events causing Woods's death."  (*People v. Bitson* (Dec. 20, 2018, B275154, B280417) [nonpub. opn.].)

Bitson and Bennett were the only persons responsible for Woods's care.  "Forensic pathologist James Ribe performed an autopsy and testified at length about Woods's injuries, finding them 'too numerous to count.'  Ribe's undisputed testimony indicated that within hours of his death, Woods had suffered blunt force trauma to his abdominal cavity inflicted by an adult,

3

which severed his liver in two.  The trauma also bruised Woods's diaphragm, caused a blood clot in Woods's back, and affected his inferior vena cava.  Ribe opined that Woods's death was not accidental but was a homicide.

"Ribe described some of Woods's external injuries at the time of his death.  The front and back of Woods's upper body were bruised.  His left shoulder was bruised.  He had two abrasions on the backside of his ribcage.  The abrasions on Woods's ribcage were indicative of blunt force trauma.  Underneath the abrasions, there was bruising and hemorrhaging, also indicative of blunt force trauma.  Woods's ninth and tenth ribs were fractured.  The fractures were 'complex,' suggesting that some were partially healed and others were new.  The new fractures occurred minutes or hours before Woods's death.  Woods's left arm was fractured. The fracture occurred by someone twisting or wrenching the arm.

"Woods's neck contained marks from someone's nails.  The marks were under Woods's jawline and along his windpipe. Woods's arms, legs, neck, torso, left hip, and right thigh contained white scars.  The white marks were from burns that appeared to be from a hot object or hot water.  Ribe opined that the burn marks were weeks or months old.

"A red mark on Woods's forearm was from a recent injury. His arms and legs contained additional 'linear marks' that had started to scab.  The back of Woods's neck and left shoulder had loop marks, indicating that someone hit Woods with a cord.

"Woods's abdomen was 'intensely distended.'  He appeared thin and emaciated.  Woods's ribs protruded.  His arms and legs were thin.  His tissue was 'wasting,' i.e., lacking muscle tissue and fat.  At the time of his death, Woods was malnourished.  His body weight was far below normal for his age.  Woods's thymus

gland was abnormally small.  The shrinkage of the thymus gland was caused by pain, fear, malnutrition, or emotional stress over a period of weeks or months.

"The inside of Woods's lip was lacerated.  His back was scarred.  His right knee and right ankle were bruised, his left ankle was injured.  The inside of his left leg contained abrasions indicative of a small, sharp object.  Woods's head was bruised indicating 'blunt force impact to the right side of the head above the ear.'  This injury occurred minutes to hours before Woods's death.  The 'bright red bleeding in the tissue that appeared fresh' showed that the wound occurred shortly before Woods's death.

"In addition to the head injury, Woods suffered numerous injuries within a few days of his death.  A laceration inside the mucous membrane in Woods's lip had not healed.  A red cut inside Woods's left arm was recent.  Linear abrasions caused by a small sharp object on Woods's left leg were recent.  Shortly before his death, Woods's ribs had been broken and Woods's left arm had been fractured just above his elbow.  Ribe determined the fracture was within one day of death by dissecting the arm and arm bone and finding fresh bleeding under the skin." (*People v. Bitson*, *supra*, B275154, B280417 [nonpub. opn.].)

In undisputed testimony, a child abuse pediatrician opined that "the cause of Woods's death was 'severe protruding blunt force trauma to the abdomen which caused a complete breaking of the liver into two pieces.'  'It's caused by a very forceful, kick, stomp, or punch into the abdomen.' " (*People v. Bitson*, *supra*, B275154, B280417 [nonpub. opn.].)  "Bitson, Bennett, and Woods were in their bedroom when the fatal blow was inflicted." (*Id.*)

## 2. *Jury Instructions*

During Bitson's jury trial, the trial court instructed jurors: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."

The trial court instructed jurors on natural and probable consequences as follows: "A defendant may be found guilty of as an aider and abettor not only of the crimes they intend to aid and abet but also of any crimes committed by the perpetrator that are the natural and probable consequences of the target crime. [¶] The People are alleging that the defendant originally intended to aid and abet child abuse likely to cause death or great bodily injury. [¶] To prove that the defendant is guilty of second degree murder under this theory, the People must prove that: [¶] 1. The defendant is guilty of child abuse likely to cause death or great bodily injury; [¶] 2. During the commission of child abuse likely to cause death or great bodily injury a coparticipant in that crime committed the crime of second degree murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the second degree [murder] was a natural and probable consequence of the commission of the abuse likely to produce death or great bodily injury."

The trial court instructed jurors on the definition of murder, defining malice. The court also instructed jurors on involuntary manslaughter as follows: "When a person commits an unlawful killing but does not intend to kill and does not act

6

with conscious disregard for human life, then the crime is involuntary manslaughter." "An unlawful killing resulting from a willful act committed without intent to kill and without conscious disregard of the risk to human life is involuntary manslaughter." As relevant to the current appeal, the court further instructed jurors: "In order to prove murder the People have the burden of proving beyond a reasonable doubt that the defendant acted with intent to kill or with conscious disregard for human life. If the People have not met either of these burdens, you must find the defendant not guilty of murder."

In addition to instructing jurors on murder, the court instructed jurors on killing a child under eight in violation of section 273ab, subdivision (a). The elements included that "defendant did an act that by its nature would directly and probably result in the application of force to the child" and "[t]he defendant's act caused the child's death." Jurors could not find that the act caused the death unless they concluded that "[t]he death would not have happened without the act."

### 3. *Conviction and Sentence*

Jurors found Bitson guilty of murder. Jurors also found Bitson guilty of assault on a child causing death. The trial court sentenced Bitson to prison for 25 years to life on the assault causing death of a child conviction and stayed a 15-year-to-life sentence on the murder conviction.

### 4. *Petition for Resentencing*

Bitson filed a petition for resentencing under section 1170.95. In her petition, she checked a box stating, "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine."

7

Bitson checked boxes concerning first degree felony murder, of which she was not convicted. Bitson also checked a box indicating that there was a prior determination that she was not a major participant and did not act with reckless indifference to human life. There was no such prior determination (and Bitson does not argue otherwise). Bitson requested the appointment of counsel.

### 5.    *Trial Court Order*

The trial court denied Bitson's petition for resentencing. The court concluded that Bitson was ineligible for relief under section 1170.95. The trial court did not appoint counsel or hold a hearing. Bitson timely appealed from the order denying her petition under section 1170.95.

## DISCUSSION

The Legislature recently amended sections 188 and 189. "[T]hose changes eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have been at least a major participant in the underlying felony and have acted with reckless indifference to human life." (*People v. Galvan, supra,* 52 Cal.App.5th at p. 1140.) "Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. [Citations.] 'This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed " 'for the criminal harms [the defendant] . . . naturally, probably, and foreseeably put in motion.' [Citations.]" [Citation.]'

8

[Citation.] Aider and abettor liability under the natural and probable consequences doctrine was thus 'vicarious in nature.' " (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749, review granted Nov. 26, 2019, S258234.) With one exception not relevant here, under the new law, a defendant must act with malice to be convicted of murder.[2] (*People v. Lee* (2020) 49 Cal.App.5th 254, 260, review granted July 15, 2020, S262459.) Malice can no longer be imputed based only on a defendant's participation in a crime. (*People v. Munoz, supra,* at p. 749.)

As noted, section 1170.95 establishes a procedure for defendants convicted of murder based on the natural and probable consequences doctrine to petition the court to vacate the murder conviction and resentence the defendant. (Section 1170.95; see also *People v. Lee, supra,* 49 Cal.App.5th at p. 257, review granted.) "Upon receipt of a petition [under section 1170.95], the trial court reviews it to determine whether the petitioner has made a prima facie case for relief. (*People v. Galvan, supra,* 52 Cal.App.5th at p. 1140.) " 'A prima facie showing is one that is sufficient to support the position of the party in question.' " (*People v. Lewis, supra,* 43 Cal.App.5th at p. 1137.) The trial court is not required to accept the assertions in the petition if the record of conviction conclusively refutes them as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 979–980.)

A person is eligible for relief under section 1170.95 only if the following conditions are established: "(1) A complaint,

---

[2] A defendant may be convicted of murder absent malice if the defendant commits felony murder as described in section 189, subdivision (e). (*People v. Lee, supra,* 49 Cal.App.5th at p. 262, review granted.)

information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).) Those changes affected the mental state requirement for murder under the felony murder rule and the natural and probable consequences doctrine. (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 262.)

A petitioner is ineligible for relief under section 1170.95 as a matter of law if the petitioner "was convicted on a ground that remains valid notwithstanding Senate Bill [No.] 1437's amendments to [Penal Code] sections 188 and 189." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, review granted Mar. 18, 2020, S260493.) "[I]f the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Ibid*.)

## A. The Record of Conviction Establishes as a Matter of Law that Bitson is Ineligible for Resentencing

Bitson argues that she set forth a prima facie case for relief because jurors may have relied on the natural and probable

10

consequences theory in convicting her of murder. According to Bitson, "[t]here is nothing in the record that shows the jury relied on the valid theory that appellant was a direct aider and abettor."

Bitson's argument ignores the record of conviction, including the jury instructions given at trial.[3] (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939 ["jury instructions are "part of the record of conviction, in assessing the prima facie showings under section 1170.95(c)."]) Woods died of a blow to his liver that severed his liver into two pieces. "Bitson, Bennett, and Woods were in their bedroom when the fatal blow was inflicted." (*People v. Bitson*, *supra*, B275154, B280417 [nonpub. opn.].) Jurors necessarily concluded that Bitson committed an act that caused Woods's death when they convicted her of child abuse because under the instructions given, jurors could convict Bitson of child abuse only if they concluded that Bitson's act caused Woods's death. Additionally, under the instructions given, jurors could not have found that the act caused the death unless they concluded that "[t]he death would not have happened without the act."

Additionally, when the jury rejected the involuntary manslaughter instruction, it necessarily concluded that Bitson acted either with the intent to kill or with the conscious disregard to the risk to human life. The trial court instructed jurors: "In order to prove murder the People have the burden of proving beyond a reasonable doubt that the defendant acted with intent to kill or with conscious disregard for human life. If the People

---

[3] The record of conviction includes a reviewing court's opinion. (*People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1136, fn. 7, review granted.)

have not met either of these burdens, you must find the defendant not guilty of murder."

Even though jurors were instructed on the natural and probable consequence doctrine, by convicting Bitson of murder, rather than involuntary manslaughter, jurors necessarily concluded that Bitson acted either with the express intent to kill or with conscious disregard for human life. In other words, the jury necessarily concluded Bitson acted with express or implied malice, both of which are sufficient to support murder. (*People v. Knoller* (2007) 41 Cal.4th 139, 152; *People v. Soto*, *supra*, 4 Cal.5th at p. 974.) Because jurors necessarily concluded Bitson acted with malice, the changes to the definition of murder in sections 188 and 189 do not apply to her.

Most of Bitson's remaining arguments depend on her demonstration of a prima facie case of eligibility for relief under section 1170.95. For example, Bitson argues that she was entitled to the appointment of counsel. The appointment of counsel is not required when, as here, the petitioner fails to make a prima facie showing of eligibility for resentencing. (*People v. Lewis*, *supra*, 43 Cal.App.5th at p.1140, review granted ["trial court's duty to appoint counsel does not arise unless and until the court makes the threshold determination that petitioner 'falls within the provisions' of the statute."]; *People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 332, review granted [same].) Bitson also argues that the trial court was required to issue an order to show cause and hold a hearing. As she acknowledges, those procedures are not triggered unless the petitioner established a prima facie case of eligibility for resentencing. (*People v. Verdugo*, *supra*, at pp. 328–330.) Because Bitson cannot demonstrate a prima

12

facie case of eligibility for resentencing, she has not triggered the additional procedures codified in section 1170.95.

## B. Bitson Fails to Demonstrate Her Remaining Arguments are Cognizable in This Appeal from an Order Denying Her Section 1170.95 Petition

During Bitson's trial, the trial court instructed jurors: "You need not unanimously agree, nor individually determine, whether a defendant is an aider or abettor or a direct perpetrator. The individual jurors themselves need not choose among the theories so long as each is convinced of guilt. There may be a reasonable doubt that a defendant was the direct perpetrator, and similar doubt th[at] he or she was the aider and abettor, but no such doubt that he or she was one or the other." In her direct appeal, Bitson unsuccessfully challenged that instruction.

Bitson attempts to renew her challenge to the same instruction in the current appeal. Bitson did not raise this challenge in the trial court in this case and fails to argue or show that she can raise it for the first time on appeal. Bitson also fails to demonstrate that alleged instructional error is cognizable as part of a petition for resentencing. The procedure described in section 1170.95—the only basis for Bitson's postconviction motion for resentencing—does not encompass raising claims of alleged instructional error.

Finally, Bitson argues that she is entitled to bring a petition for writ of habeas corpus because her conviction was not final at the time the Legislature amended sections 188 and 189, codifying the new changes to the murder law. Given that this case involves an appeal from the order denying Bitson's section 1170.95 petition, not a petition for writ of habeas corpus, we need not consider whether Bitson could bring a habeas

13

petition.  To the extent Bitson is requesting this court deem her appeal to be a petition for writ of habeas corpus, we deny that request.

## DISPOSITION

The trial court's order is affirmed.
<u>NOT TO BE PUBLISHED.</u>


BENDIX, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.