Filed 6/24/21  P. v. Mora CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B308321 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA018211) |
| v. | |
| WILLIAM ALEXANDER MORA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed and remanded.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

William Alexander Mora challenges the trial court's denial of his petition for resentencing pursuant to Penal Code section 1170.95.[1]  The trial court denied the petition after holding a hearing at which the prosecutor proffered Mora's testimony at a parole hearing; Mora presented no new evidence.  On appeal, Mora argues that the superior court misunderstood this court's prior opinion in concluding that Mora acted with malice.  Mora also argues that the trial court applied the wrong standard of proof to determine whether the prosecution established its burden to show petitioner was not eligible for resentencing.  According to Mora, the trial court "appear[s] to have primarily relied upon this Court's prior analysis" rather than acting as an independent factfinder.  We find no prejudicial error, and affirm the order denying Mora's petition for resentencing.  We remand the case for the limited purpose of amending the abstract of judgment to conform to the disposition in this court's prior opinion.

## BACKGROUND

Two doctors concluded, and it is undisputed, that Daniel Rios, a member of the 18th Street gang, died as a result of extensive burns. [2]  (*People v. Escobar, et al.* (June 30, 1998, B087052) [nonpub opn.] at p. 6 (*Escobar*).)  A jury convicted Mora, a member of the Playboys gang, of the second degree

---

[1]  Undesignated statutory citations are to the Penal Code.

[2]  Mora was tried with other defendants, including Edgar Escobar.  We summarize only the facts relevant to the current appeal.

murder of Daniel Rios and of aggravated mayhem, also involving Rios.  (*Id.* at p. 2.)  With respect to both offenses, the jury found true that Mora personally used a deadly and dangerous weapon within the meaning of section 12022, subdivision (b).[3]  (*Escobar*, at p. 2.)  The jury rejected allegations against Mora of first degree murder, first degree murder by means of torture, and first degree murder by means of lying in wait.  (*Ibid.*)

After trial, the sentencing court indicated that "defendant cannot be sentenced on both counts . . . .  In my view the aggravated mayhem was a method by which the infliction of death was accomplished . . . ."  The court stayed the life sentence on aggravated mayhem pursuant to section 654.  In discussing the aggravating factors, the sentencing court stated:  "The victim was vulnerable, being intoxicated at the time he was apprehended by the rival gang.  The defendant, Mr. Mora, was an active participant in taking him from his territory to rival territory where he was then beaten, and he was the first, Mr. Mora was the first to actually start the infliction of pain on the victim."  Mora's trial counsel agreed that Mora "was the one that initially saw the 18th Streeter, he was the one that initially struck the 18th Streeter in the alley and he was the one who in part was responsible for bringing him back to the alley."

---

[3]  The People had alleged Mora had used "a deadly and dangerous weapon, to wit, fists, feet, bottle, a wooden stake, and a cigarette lighter."  (*Escobar*, *supra*, B087052, at p. 2.)  Our opinion noted that "the word 'lighter' was handwritten in the margin of the information," a lighter was not on the verdict form, and "[t]here was no finding by the jury that the cigarette lighter which [co-defendant] Funes had procured to set Rios afire was a dangerous or deadly weapon."  (*Id.* at p. 23.)

Mora appealed from the judgment of conviction.

1.    ***Statement of facts in the appeal from the judgment of conviction***

The prior appellate opinion following the judgment of conviction (sometimes referred to as the Opinion), is central to the current case because the parties and the trial court relied on it.  We recite below the facts recounted in our Opinion.

On April 6, 1990, Mora attended a party with other Playboy gang members.  (*Escobar*, *supra*, B087052, at p. 3.)  The Playboys and the 18th Street gang were rival gangs.  (*Ibid*.)  On his way home, "Mora heard a man yell '18th Street.'  Mora 'gave him the finger.'  The man responded by throwing a bottle at Mora's car.  Mora, a 'veterano,' an older member of a gang who has been in a gang for a long time, went back to the neighborhood to 'get some youngsters.'" (*Escobar*, at p. 4.)

"Back at the neighborhood when Mora stated what happened, . . . [Manuel] Martinez and [Arturo] Sanchez got into Mora's car with Mora, then went back to [the location where Mora saw Rios].  Martinez was angry about the shooting of his girlfriend on the previous night." (*Escobar*, *supra*, B087052, at p. 4.)  When they located Rios, "Martinez struck him in the face and started beating him.  Mora pulled him off of the man and they left the scene." (*Ibid*.)

"They went back to the [Playboys'] neighborhood.  They told the 15 to 18 people left at the party what had happened.  Sanchez said he had hit the man in the face.  Either Martinez or [another Playboy gang member] suggested that they should return and bring the man back to the alley." (*Escobar*, *supra*, B087052, at p. 4.)  Martinez drove himself and four other gang members including Mora to the area where they had seen Rios, and "Mora

4

pointed out" Rios.  (*Ibid.*)  Rios "had an 18th Street tattoo on his shoulder and he appeared to be drunk.  There were bruises on his face; he looked like he had been in a fight."  (*Ibid.*)

"Mora lured Rios into Martinez's truck by telling Rios that he [Mora] was an 18th Streeter and that they would take Rios home.  They drove back to the party area.  There were still approximately 15 to 18 gang people there.  Mora identified himself to Rios as a Playboy and then struck Rios in the face knocking him to the ground.  About 15 gang [members] who were present began beating and kicking the fallen Rios in his head, torso, and face. . . .  [A Playboy gang member], who had been hitting, kicking, and jumping on Rios, took a bottle and smashed it over Rios's face.  He then picked up a pointed wooden stick and pushed it into Rios's ear.  Rios was bleeding profusely from his face and ear . . . .  The assault lasted 10 to 15 minutes.

"When the beating stopped, some of the Playboys ran away, leaving Rios in the alley.  Mora [and three other 18th Street gang members], and an unidentified female then dragged Rios down the alley and put him in or near a dumpster. . . .  Someone stuffed paper between Rios's legs, then some of the women sprayed Rios with hairspray; some of the men doused him with gasoline. [Ulysses] Funes [another Playboy] then procured a cigarette lighter from Mora's vehicle; [w]ith three others, Funes went down the alley to where Rios was lying.  A few moments later, there was smoke.  When the men returned, they said they had set Rios on fire.  After the gang members moved away from Rios, one of them returned; he poured something on Rios that made the fire flare up and one of the gang member's shoes caught on fire." (*Escobar*, *supra*, B087052, at pp. 3–5.)

"The doctors stated that had Rios lived, he may have suffered permanent deformity in addition to chronditis, a chronic infection of the cartilage which would recur throughout his lifetime. Several of Rios's teeth were broken. The right side of his scalp and neck suffered second and third degree burns. There were lacerations to his lower lip, inner mucosa and to the portion of the tongue where it attached to the mouth. The tongue itself was 'markedly swollen.' He had inhaled toxic or hot gasses which damaged his lungs and bronchial tubes. He had third degree burns over 45 percent of his body and second degree burns over 13 percent of his body, located principally on his legs and back and right arm and face. The severity of the burns was such that at least one of Rios's legs would have had to be amputated or would have had severe reduction in function had he lived. His kidney function was severely damaged. He was placed on dialysis to purge the blood of toxins. A CAT scan showed swelling and bleeding in the wall of his abdominal cavity. Rios died on April 11, 1990." (*Escobar*, *supra*, B087052, at pp. 5–6.)

## 2. *The Opinion reverses the enhancement*

Following Mora's appeal from the judgment of conviction, we reversed the personal use of a deadly weapon enhancement, finding that hands, fists, or feet are not dangerous and deadly weapons. (*Escobar*, *supra*, B087052, at pp. 20–23.) "We hold to be erroneous the jury finding that any appellant's use of hands, fists, or feet in the beating of Rios constituted personal use of a deadly or dangerous weapon, in violation of section 12022, subdivision (b)." (*Escobar*, at pp. 22–23.)

6

### 3. *The Opinion rejects the argument that insufficient evidence supported aggravated mayhem*

On appeal from the judgment of conviction, Mora argued that he lacked the specific intent to support the aggravated mayhem conviction.[4] (*Escobar*, *supra*, B087052, at p. 17.) In the context of discussing this issue, this court explained that Mora and a codefendant "were the moving participants in the burning of the victim." (*Id.* at p. 19.) Mora participated in the beating of Rios. (*Id.* at p. 20.) "After Rios was on fire, . . . Mora and [a codefendant] came back smiling and laughing to the location where the other Playboys were standing." (*Id.* at p. 19.) We also concluded, "[t]he jury was presented with substantial evidence to support a verdict of aggravated mayhem based upon either the burning of the victim or the controlled, directed stomping of his head and face." (*Id.* at p. 20.)

### 4. *The Opinion rejects Mora's argument that the second degree murder must be reversed*

In the appeal from the judgment of conviction, Mora argued: "The second degree murder conviction must be reversed because the natural-and-probable-consequences doctrine on which it rests violates the merger rule of *People v. Ireland* [(1969)

---

[4] Section 205 provides in pertinent part: "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body."

7

70 Cal.2d 522 (*Ireland*)]."[5]  (Capitalization & boldface omitted.)
Mora further argued:  "When a killing arises out of an assault,
the state may not rely on the natural-and-probable-consequence
rule to avoid its obligation to prove malice."  (Boldface omitted.)

 *Ireland*, on which Mora relied, held that the felony murder
based on assault with a deadly weapon as the underlying murder
relieved the prosecution of proving malice aforethought.  (*Supra*,
70 Cal.2d at pp. 538–539.)  In *Ireland*, the jury could have
convicted defendant of second degree murder by finding "only
that the homicide was committed in the perpetration of the crime
of assault with a deadly weapon."  (*Id*. at p. 539.)  "To allow such
use of the felony-murder rule would effectively preclude the jury
from considering the issue of malice aforethought in all cases
wherein homicide has been committed as a result of a felonious
assault—a category which includes the great majority of all
homicides.  This kind of bootstrapping finds support neither in
logic nor in law.  We therefore hold that a second degree felony-
murder instruction may not properly be given when it is based
upon a felony which is an integral part of the homicide and which
the evidence produced by the prosecution shows to be an offense
included *in fact* within the offense charged."  (*Ibid*.)

 As noted, Mora argued that *Ireland*'s rule with respect to
felony murder should be extended to second degree murder based
on the natural and probable consequences doctrine.  The Opinion

---

 [5] The trial court instructed the jury:  " ' One who aids and
abets another in the commission of a crime is not only guilty of
that crime, but is also guilty of any other crime committed by a
principal which is a natural and probable consequence of the
crime originally aided and abetted.' "  (*Escobar*, *supra*, B087052,
at p. 30.)

8

rejected Mora's arguments. At the outset this court explained: Mora "is the one who initially crossed paths with Rios; who had an altercation with him; who felt disrespected by him; who went to the party location and picked up 'some youngsters' and then returned to the location where Rios was beaten; who again returned to the party area, changed vehicles, and with four others went to pick up Rios and bring him back to the neighborhood; who lured Rios into the truck; who led Rios into the alley and was the first to punch him; who participated in the group beating; who helped drag him to the dumpster area where gasoline and hairspray were poured on Rios and papers stuffed between his legs; whose car it was from which the cigarette lighter which set Rios on fire was procured; and, who emerged from the alley smiling even as Rios was being burned alive after having been severely beaten." (*Escobar*, *supra*, B087052, at p. 28.)

Based on these facts (which are not disputed in the current appeal), the Opinion explained: "Mora comes within the penumbra of liability as a principal, not as an aider and abettor." (*Escobar*, *supra*, B087052, at p. 30.) We held that the principles of *Ireland* did not apply because Mora "was a perpetrator, not an aider and abettor. His liability is direct, not derivative. In addition, Mora has conspiratorial liability." (*Ibid.*) "Here, several gangbangers combined to commit the unlawful act of removing a person from one locale to another and beating and then burning him to death." (*Id.* at p. 31.)

### 5.  *Mora's trial testimony*

Mora testified that he joined the Playboys in 1979 or 1980. Mora also testified that the Playboys and 18th Street gang were rivals and that rival gang members shot at each other. The

9

rivalry had lasted at least 10 years and "[p]eople were being killed and shot at for at least ten years . . . ."

On the night of the murder, Mora saw Rios "throwing 18th Street gang signs." Mora "flipped him off" and Rios "threw a bottle" at Mora's car. Mora left and later returned with two confederates who beat up Rios. Mora tricked Rios into entering his confederate's truck. Mora knew transporting Rios to Playboy territory would create danger for Rios. Mora testified that once Rios was in Playboy territory, Mora was the first to hit him. After Mora hit him, 10 to 13 other Playboys joined in beating Rios. Mora saw Rios on fire but testified that he did not light the fire. Mora did not assist Rios, but he claimed to have called 911.

Mora testified that he did not intend to kill Rios and did not think Rios would be killed. Mora also denied laughing and joking after seeing Rios on fire. Mora did not feel "bad" about Rios but he also did not "feel good about" the fact his fellow gang member set Rios on fire.

### 6.     *Petition for resentencing*

On June 30, 2019, Mora filed a petition for resentencing. Mora alleged that he was convicted of second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine. Mora also alleged that he could not now be convicted of murder because of changes made to sections 188 and 189 effective January 1, 2019. The trial court appointed counsel to represent Mora.

The People opposed the petition, arguing, among other things, that Mora was a direct participant in the murder and thus was not eligible for relief under section 1170.95. The People included as exhibits the record from Mora's appeal from the

10

judgment of conviction[6] and a transcript of Mora's 2018 parole hearing, which is summarized below.

Defendant's counsel argued in reply that the jury could have convicted defendant based on the natural and probable consequences doctrine, "that murder is the natural and probable consequence of an assault."

The trial court issued an order to show cause and set the matter for a hearing.

## 7.    *Parole hearing*

At his June 12, 2018, parole hearing, Mora stated that Rios threw a bottle at Mora's car so Mora "went back to the neighborhood and picked up a few homeboys and went back and beat this guy up."  Mora "directed [his] homeboys to get out of the car, and [Mora] . . . pointed him [Rios] out," and Mora's fellow gang members beat up Rios.  Mora then "had the bright idea to bring him [Rios] back to the neighborhood."  Mora believed that Rios violated a "code of honor" when Rios entered Mora's "territory" and Mora wanted to make Rios "pay."

Mora put Rios in Martinez's truck.  Once Rios exited the truck, Mora started to punch him.  Then 10 to 15 people started to beat up Rios.  They were "ready to follow" Mora's directions.  Mora "threw the first punch."  The gang members dragged Rios down an alley and started to hit him with sticks.  Mora started to walk away when someone doused Rios in gasoline kept in Mora's car.  Mora did not know his fellow gang member would light Rios on fire.  Mora saw that Rios was on fire but he did not start the

---

[6] Finding good cause, we augmented the record in the current appeal to include that record from the prior appeal.

11

fire.  After the "alley burning," Mora went home and, on the way home, called 911.

Mora testified, "I didn't care about his [Rios's] life or" Mora's own life.  He believed Rios had to "pay" because Rios "trespass[ed]" Mora.  Mora testified he was "callous" to Rios's "well-being."

### 8.  *Section 1170.95, subdivision (d)(3) hearing*

At the outset, the trial court ruled that it would consider the defendant's statements made under oath at his parole hearing.[7]  The People proffered no other new evidence; Mora proffered none.

The People argued Mora was a direct participant in the second degree murder.  The People further argued that Mora's testimony at the parole hearing demonstrated that he was the person who started the events.  The People concluded that Mora therefore could be found guilty under current law.

Defense counsel emphasized that the jury rejected the first degree murder count and murder by torture allegation.  Defense counsel reasoned that the jury rejected "him being involved in lighting the victim on fire" when it found the torture allegation not true.  Counsel further argued that the jury must have convicted Mora based on a natural and probable consequences theory.

### 9.  *Trial court ruling*

The trial court denied Mora's petition for resentencing. Relying on the Opinion, the trial court explained that Mora and

---

[7] Mora does not challenge admission of these statements on appeal.

[another Playboy] "were the moving participants in the burning of the victim." The Opinion stated that Mora "participated in the beating of the victim, and the victim in this case suffered massive injuries to his head and face from the beating . . . ." The trial court relied on the Opinion's description of Mora as "the one who initially crossed paths with Rios who was the victim, who had an altercation with him, who felt disrespected by him, who went to the party location and picked up . . . 'some youngsters' . . . and then returned to the location where Rios was beaten, who, again returned to the party area, changed vehicles, and with four others went to pick up Rios and bring him back to the neighborhood who lured Rios into the truck, who led Rios into the alley and was the first to punch him, who participated in the group beating, who helped drag him to the dumpster area where gasoline and hair spray were poured on Rios and papers stuffed between his legs, whose car it was from the cigarette lighter which set Rios on fire was procured and who emerged from the alley smiling even as Rios was being burned alive after having been severely beaten."

The trial court stated that Mora was a "perpetrator of an assault." Relying on the Opinion, the court stated that "Mora comes within the penumbra of liability as a principal, not an aider and abettor." Relying on the Opinion, the trial court stated that "defendant's liability relating to Mora is direct, not derivative."

The trial concluded that the Opinion "found that this was not based on the natural and probable consequences theory which is derivative, but as a direct perpetrator to the crime. So consequently, [in] this case [the] Court of Appeal found the

13

defendant acted with either express or implied malice, not from derivative liability."

The trial court ultimately concluded:  "Based upon the totality of the evidence I have before me, the People have met their burden by proof beyond a reasonable doubt, and the petition is denied."

## DISCUSSION

### A.    Legal Background

"[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)."  (*People v. Gentile* (2020) 10 Cal.5th 830, 843 (*Gentile*).)  " '[A]ider and abettor culpability under the natural and probable consequences doctrine is vicarious in nature' and ' "is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense" ' may not be intended at all."  (*Id.* at p. 844.)  The natural and probable consequences doctrine applies to an aider and abettor.  (*People v. Lombardo* (2020) 54 Cal.App.5th 553, 556.)  The natural and probable consequences doctrine imposes vicarious liability on the aider and abettor for the nontarget offense.  (*People v. Offley* (2020) 48 Cal.App.5th 588, 595 (*Offley*).)

Recent changes in the law prevent the use of the natural and probable consequences doctrine to convict a defendant of murder when the defendant only aided and abetted a nonhomicide crime that resulted in murder.  (*Gentile*, *supra*,

14

10 Cal.5th at p. 845; § 188.)  Section 1170.95 sets forth a process for a person convicted of murder under a natural and probable consequences theory to seek resentencing.[8]  (*Gentile*, at p. 853.)

The recent changes to the law on murder do not alter "the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged."  (*People v. Clements* (2021) 60 Cal.App.5th 597, 618, review granted Apr.  28, 2021, S267624 (*Clements*); *People v. Soto* (2020) 51 Cal.App.5th 1043, 1057, review granted Sept. 23, 2020, S263939.)  Implied malice has a physical and mental component. " ' "The physical component is satisfied by the performance of 'an act, the natural consequences of which are dangerous to life.' [Citation.]  The mental component is the requirement that the defendant 'knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.' [Citation.]" ' [Citation.]"  (*People v. Soto* (2018) 4 Cal.5th 968, 974.)

**B.     The Trial Court's Denial of Mora's Petition for Resentencing Is Consistent With the Opinion but Even Assuming Error Arguendo Mora Demonstrates No Prejudice**

Mora argues that the trial court "denied appellant's Penal Code section 1170.95 petition based upon a fundamental misunderstanding of this Court's prior opinion . . . ."  Specifically, Mora attacks the trial court's statement that the Opinion "found that . . . this was not based on the natural and probable consequences theory which is derivative, but as a direct

---

[8] With the exception for police officers killed in the course of duty, these recent changes also extend to felony murder (§ 189, subd. (e)). Felony murder is not at issue in the current case.

15

perpetrator to the crime. So consequently, [in] this case[, the] Court of Appeal found the defendant acted with either express or implied malice, not from derivative liability."

We agree with Mora's observation that we did not expressly state in the Opinion that Mora was not convicted for murder based on the natural and probable consequences theory or that Mora acted with express or implied malice. That Mora acted with express or implied malice, however, is the only conclusion consistent with the Opinion.

As previously explained, the natural and probable consequences doctrine applies to accomplice liability, not to that of a direct perpetrator. Here, the Opinion forecloses a conviction based on the natural and probable consequences doctrine because we concluded Mora was not an aider and abettor. First, the Opinion concludes Mora directly participated in the aggravated mayhem. The same facts underlie both the aggravated mayhem and the second degree murder, as the sentencing court recognized when it stayed Mora's sentence on aggravated mayhem. Additionally, in rejecting application of *Ireland*'s merger doctrine, the Opinion also concludes that Mora was "not an aider and abettor. His liability is direct, not derivative." (*Escobar*, *supra*, B087052, at p. 30.) Mora's direct liability is further demonstrated by the jury verdict because the jury concluded that Mora *personally* used a weapon in committing both the aggravated mayhem and the second degree murder. Although this court ultimately reversed the personal use enhancement because hands, fists and feet are not deadly or dangerous weapons,[9] this basis for our reversal of the enhancement does not

---

[9] Section 12022, subdivision (b)(1) provides: "A person who personally uses a deadly or dangerous weapon in the commission

16

alter the jury's finding regarding Mora's personal participation in the aggravated mayhem and second degree murder. Mora offered no additional facts at the section 1170.95 subdivision (d)(3) hearing and, on appeal, offers no theory that would support the conclusion that he did not directly participate in the acts constituting the second degree murder, albeit with his fellow gang members.

The Opinion and the prosecutor's submission of Mora's parole hearing testimony at the section 1170.95, subdivision (d)(3) hearing are consistent with only one conclusion—that Mora acted with implied malice. The undisputed facts demonstrate that Mora engaged in conduct that endangered the life of Rios and had knowledge that his conduct endangered Rios's life and that he acted with conscious disregard for Rios's life. (*People v. Soto*, *supra,* 4 Cal.5th at p. 974 [describing test for implied malice].) Mora returned to the site where he saw Rios with additional Playboy gang members, led the beating of Rios, and dragged Rios to the area where one of Mora's fellow gang members lit Rios on fire using gasoline and a lighter from Mora's car. At his hearing before the Parole Board, Mora reiterated that he "didn't care about . . . [Rios's] life . . . ." The evidence supports only the conclusion that Mora was aware of the risk of death to Rios and acted in conscious disregard of that risk.

Mora's own testimony confirms that he acted, at a minimum, with implied malice. At trial, Mora testified that he

_____

of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense."

knew transporting Rios to Playboy territory would create danger for Rios. Mora admitted he used a ruse to lure Rios to Playboy territory. Additionally, Mora knew that rival gang members frequently shoot at each other and that the Playboys and 18th Street were rival gangs and had killed each other for 10 years. Thus, Mora knew he was placing Rios's life in peril when he lured Rios to Playboy territory. Even if Mora did not anticipate the method of death (burning Rios alive), he acted with conscious disregard when he brought Rios to Playboy territory, and initiated a massive gang beating, while knowing that rival gang members routinely kill each other.

Assuming arguendo that the trial court misunderstood the Opinion, Mora demonstrates no prejudice under either a *Watson* or *Chapman* standard.[10] Mora did not testify at the section 1170.95, subdivision (d)(3) hearing. Mora identifies *no* evidence supporting the conclusion that he did not act with implied malice sufficient to support a conviction under current law. In short, Mora identifies no theory under which he is eligible for resentencing.

The authority Mora cites for the proposition that the case has to be remanded to the trial court is inapposite. In *Offley*, *supra*, 48 Cal.App.5th at pp. 592–594, we held the trial court misunderstood the record of conviction when it concluded as a matter of law, and without appointment of counsel, that the defendant's petition did not demonstrate defendant came within the provisions of section 1170.95, and therefore, that defendant was entitled to appointment counsel as to whether defendant

---

[10] *People v. Watson* (1956) 46 Cal.2d 818; *Chapman v. California* (1967) 386 U.S. 18.

18

had made a prima facie case of entitlement for relief. (*Id.* at pp. 596–600.) In contrast to *Offley*, the trial court here did not misunderstand our Opinion, did appoint counsel, and held a hearing on Mora's petition.

Mora also cites *In re Cortez* (1971) 6 Cal.3d 78, 86, in which the court denied a petitioner probation based upon an erroneous legal basis and the court held that the petitioner was entitled to a new probation hearing. *Cortez* does not assist Mora because, in *Cortez*, the petitioner was "in fact eligible for probation." (*Ibid.*) Here, Mora identifies no theory supported by the record that he was in fact eligible for resentencing under section 1170.95.

## C.   Assuming the Trial Court Applied the Wrong Standard of Proof in Evaluating the Evidence, Mora Demonstrates No Prejudice

Mora argues this court must reverse the trial court's denial of his petition because the trial court applied the wrong standard of proof at the section 1170.95, subdivision (d) hearing. According to Mora, "the superior court erred by not acting as an independent factfinder and making its own independent determination as to whether appellant is guilty of second degree murder under current law based upon the proof beyond a reasonable doubt standard." According to Mora, "[b]ecause the record in this case demonstrates the superior court instead relied upon an erroneous interpretation of this Court's prior opinion on direct appeal, as well as this Court's prior sufficiency of the evidence review to support the mayhem charge, the superior court's order denying appellant's petition should be reversed and this case remanded for a further hearing on the merits of appellant's petition under the correct standard." Mora also argues that this court should reject its holding in *People v. Duke*

19

(2020) 55 Cal.App.5th 113, review granted January 13, 2021, S265309 (*Duke*), and instead adopt the holding in *People v. Rodriguez* (2020) 58 Cal.App.5th 227, review granted March 10, 2021, S266652 (*Rodriguez*).

As Mora points out, there is a split of authority on the standard of proof a trial court should apply at a section 1170.95, subdivision (d)(3) hearing. *Duke* announced that the trial court must determine "beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder." (*Supra*, 55 Cal.App.5th at p. 123, review granted.) *Duke* further held that this standard "is essentially identical to the standard of substantial evidence, in which the reviewing court asks ' "whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. . . . [¶] . . ." [Citation.]' [Citation.]" (*Ibid.*)

Other courts have rejected *Duke*'s holding that at a section 1170.95, subdivision (d) hearing, the trial court applies a standard akin to review for substantial evidence. For example, our colleagues in Division Seven of this court reasoned in *Rodriguez* that the trial court acts as an "independent fact finder and determine[s] whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 and is thus ineligible for resentencing under section 1170.95, subdivision (d)(3)." (*Supra*, 58 Cal.App.5th at pp. 243–244, review granted; see also *People v. Fortman* (2021) 64 Cal.App.5th 217, 221, 226 [following *Rodriguez*]; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813 [following *Rodriguez*]; *Clements*, *supra*, 60 Cal.App.5th at p. 615, review granted ["[T]he plain text of the

20

statute requires the trial judge to sit as a fact finder, not as a quasi-appellate court."]; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974 [disagreeing with *Duke*].)

Even if Mora could demonstrate that the trial court applied the wrong standard of proof—an issue we need not decide—he demonstrates no prejudice under any standard from that assumed error. Mora offers no theory under which a rationale trier of fact considering all of the evidence presented at the section 1170.95, subdivision (d)(3) hearing, including the Opinion, could conclude that Mora was eligible for resentencing.

## D. The Abstract of Judgment Must Be Amended

An unauthorized sentence may be corrected at any time. (*People v. Cabrera* (2018) 21 Cal.App.5th 470, 477.) On appeal, Mora demonstrates, and the Attorney General agrees, the abstract of judgment fails to reflect correctly the Opinion's reversal of the section 12022 enhancements. We therefore order the abstract be so amended.

21

## DISPOSITION

The order denying William Alexander Mora's petition for resentencing is affirmed. The case is remanded to the trial court to amend the abstract of judgment to delete any reference to the Penal Code section 12022 enhancements. The trial court shall forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.