Filed 8/18/22  P. v. Matthews CA2/1
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B299219 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A367138) |
| v. | |
| DONALD MATTHEWS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Reversed.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1981, petitioner and appellant Donald Matthews pleaded guilty to one count of murder, and the trial court sentenced him to 15 years to life. In 2019, petitioner filed a petition for resentencing pursuant to Penal Code section 1170.95, which is now Penal Code section 1172.6 (section 1172.6). Section 1172.6 allows a petitioner to obtain retroactive relief based on recent changes in the murder law. The resentencing court denied Matthews' petition at the prima facie stage and, in July 2020, this court affirmed the resentencing court's order.

Subsequently, our Supreme Court vacated our opinion and remanded the case. We now reverse the resentencing court's order denying Matthews' petition at the prima facie stage. We reverse because the record of conviction does not foreclose the conclusion that Matthews could have pleaded guilty to murder on a theory that he aided and abetted an assault with a firearm, the natural and probable consequences of which was murder.

## BACKGROUND

Our record does not include the information or abstract of judgment.

### 1. *Preliminary Hearing*

Counsel represented petitioner at a preliminary hearing in April 1981. Police Officer William Holcomb testified that he interviewed petitioner in Louisiana. Petitioner told Holcomb that a month earlier on March 16, petitioner observed two of his friends, whose monikers were Snipper and Mugga, with a .12-gauge shotgun. When Mugga told petitioner that they were going to "bust on some Six-Deuces," petitioner volunteered to drive them. Petitioner "then stated that himself along with

2

several of his friends entered a car that he had stolen the day prior and drove around the area of 60th and San Pedro looking for some Six-Deuces to shoot." When his friends exited the car to shoot the Six-Deuces, petitioner "remained at the location with the doors open and the engine running . . . so that they could make a fast getaway." After the shooting, petitioner drove his friends home. Officer Holcomb did not define "bust on," and no other witness at the preliminary hearing testified as to the meaning of that term.

## 2. *Plea and Sentence*

Petitioner pleaded guilty to murder in violation of Penal Code section 187. Defense counsel and the prosecutor stipulated that the murder was in the second degree. At the plea hearing, petitioner described the murder as follows: Knowing their purpose to shoot Andre Purnell, petitioner drove Robin and Donnie Henning to Purnell. Petitioner "drove the car with that in mind," that being "their purpose in going over to shoot Andre Purnell." Petitioner knew that the Hennings had a shotgun in the car with them. Petitioner waited in the car during the shooting and then drove away.

At the hearing in which petitioner pleaded guilty, defense counsel stated: "He's 19. But he was not the shooter, and he openly admits it. He admitted it to the officers when they picked him up down in Louisiana. He's been no problem. He's admitted it at all times." The prosecutor recommended that petitioner be sent to Youth Authority for a "diagnostic study" and did not object to petitioner serving his sentence at the Youth Authority. The prosecutor further represented that to his knowledge petitioner had "no prior convictions of any felonies or prior convictions of violent crimes."

3

Defense counsel represented that both he and the prosecutor believed the Youth Authority would accept petitioner. Defense counsel represented that the shooter was 14 years old and sentenced as a juvenile. Defense counsel later represented that after serving 18 months, the shooter was released from Youth Authority.

Youth Authority denied petitioner admission because it lacked adequate facilities. The trial court indicated that "but for the lack of beds they would have taken him . . . ." The trial court stated: "To make the record perfectly clear, just from my experience, several people that have been sent to Youth Authority have been sent back with this same inadequate facility letter. I think that is a sad state of affairs . . . ." The trial court sentenced petitioner to 15 years to life.

### 3. *Petition for Resentencing*

On April 17, 2019, petitioner filed a petition for resentencing pursuant to section 1170.95 (now § 1172.6). In his petition, petitioner described his offense as follows: "On March 16, 1981, gang members of the Six Deuce Crips were at the corner of 61st Street and San Pedro Avenue. Rival gang members of the Five Deuce Crips drove by that corner and parked nearby. The Hennings and Jessie Owens got out of the car driven by 19-year-old Petitioner who remained in the car as the getaway driver." Petitioner's confederates killed one person and seriously wounded another.

Petitioner attached his declaration stating that an information was filed against him that allowed the prosecution to proceed under the felony murder rule or the natural and probable consequences doctrine. Petitioner stated, "I did not, with the intent to kill, aided, abetted, counseled, commanded, induced,

4

solicited, requested, or assisted the actual killer in the commission of murder in the first-degree." Petitioner declared that he was eligible for resentencing. Petitioner requested the appointment of counsel.

4. ***The Resentencing Court Denied the Petition for Resentencing***

After reviewing the preliminary hearing transcript and plea colloquy, the resentencing court concluded that petitioner was not eligible for resentencing. The resentencing court denied the petition without appointing counsel or holding a hearing. The court relied on petitioner's admissions as recounted at the preliminary hearing. The court also relied on petitioner's statements during the plea colloquy. The court explained: "Based on the record of conviction, there is no evidence of a natural and probable consequence theory. By his own admission, petitioner acted with express malice.[1] As such, he is not eligible for" resentencing.

## DISCUSSION

"[U]ntil recently, when a person aided and abetted a nonhomicide crime that then resulted in a murder, the natural and probable consequences doctrine allowed him or her to be convicted of murder without personally possessing malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 845

---

[1] Express malice requires an intent to kill. (*People v. Soto* (2018) 4 Cal.5th 968, 970.) Implied malice involves " ' "a conscious disregard for the danger to life that the [defendant's] act poses." ' [Citation.]" (*People v. Offley* (2020) 48 Cal.App.5th 588, 598 (*Offley*).)

5

(*Gentile*).)  Under the natural and probable consequences doctrine, "an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*Id*. at p. 843.)  In the case of a homicide, then, "[s]o long as the direct perpetrator possessed malice, and the killing was a natural and probable consequence of the crime the defendant aided and abetted," the defendant is culpable for murder regardless of "whether the defendant intended to kill or acted with conscious disregard for human life." (*Id*. at p. 845.)

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) amended section 188 to provide that '[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (Stats. 2018, ch. 1015, § 2.)  The amendment effectively 'eliminates natural and probable consequences liability for first and second degree murder.' [Citation.]" (*People v. Garrison* (2021) 73 Cal.App.5th 735, 742.)

Senate Bill No. 1437 also enacted section 1170.95, which provides a procedure by which a person convicted of murder under a theory invalidated under Senate Bill No. 1437, including the natural and probable consequences doctrine, may petition to vacate the conviction. (*Gentile, supra*, 10 Cal.5th at p. 843; § 1170.95, subd. (a)(3).)  Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill No. 775) amended 1170.95 effective January 1, 2022 to expand its reach to defendants convicted of attempted murder and manslaughter.  (§ 1170.95, subd. (a); Stats. 2021,

6

ch. 551, § 2.) Effective June 30, 2022, the Legislature renumbered the code section.

Upon receipt of a complying petition under section 1172.6, the trial court must appoint counsel, allow briefing, and then determine if the petitioner has made a prima facie showing that, inter alia, "[t]he petitioner could not presently be convicted of murder or attempted murder" under the amendments to the Penal Code enacted under Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) In making the prima facie determination, the trial court must " ' "take[ ] [the] petitioner's factual allegations as true and make[ ] a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. . . ." ' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Ibid.*) The court may rely on the record of conviction in making the prima facie determination, however, and " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Ibid.*)

An error in failing to appoint counsel at the prima facie stage should be evaluated for prejudice under the *Watson*[2] standard. (*Lewis*, *supra*, 11 Cal.5th at pp. 973–974.) A petitioner " 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition

---

[2] *People v. Watson* (1956) 46 Cal.2d 818, 836.

7

would not have been summarily denied without an evidentiary hearing." ' [Citation.]" (*Id.* at p. 974.) A petitioner shows prejudice when the record of conviction does not refute his claim of eligibility as a matter of law. (*People v. Flint* (2022) 75 Cal.App.5th 607, 613.)

Turning to this case, upon remand, Matthews demonstrates that it is reasonably probable if he had been afforded the assistance of counsel, his petition would not have been summarily denied without a hearing. Specifically, he argues that the record does not foreclose the theory that petitioner aided and abetted an assault with a firearm, the natural and probable consequences of which was murder. Under former law, the foregoing theory was viable. (*People v. Chiu* (2014) 59 Cal.4th 155, 161 [under former law, " 'if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.' "].)

The fact that Matthews knew his confederate had a shotgun and planned to shoot Purnell does not demonstrate as a matter of law that Matthews harbored malice aforethought. (See *Offley*, *supra*, 48 Cal.App.5th at p. 598.) *Offley* involved a petitioner who was convicted of murder, attempted murder, and shooting at an occupied motor vehicle after he and several fellow gang members fired shots into a vehicle, killing one occupant and seriously wounding another. (*Id.* at p. 592.) The jury had been instructed as follows on the natural and probable consequences doctrine in cases of conspiracy: " 'A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co–

conspirator to further the object of the conspiracy, even though that crime was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime.' " (*Id*. at p. 593.) The prosecutor argued to the jury that it could convict on the basis of this instruction, stating "that the 'common design of [the] conspiracy' was 'assault with a firearm,' and that any member of the conspiracy was 'guilty of, not only that particular crime, but also the natural and probable consequence of any crime of the co-conspirator.' " (*Id*. at p. 599.)

We reversed the trial court's summary denial of petitioner Offley's resentencing petition. We could not "exclude the possibility that the jury believed Offley acted without intending to kill [the victim] or consciously disregarding that risk. The jury might have concluded that Offley intended to take part in a conspiracy to commit assault with a firearm, or to fire into an occupied vehicle, with the aim of either injuring or merely frightening" the victim. (*Offley*, *supra,* 48 Cal.App.5th at p. 599.) "The jury could have then concluded that [the victim's] death was the natural and probable consequence of the conspiracy and convicted him of murder without finding beyond a reasonable doubt that he acted with malice aforethought." (*Ibid*.)

Similarly, here we cannot exclude the possibility that petitioner pleaded guilty because he intended to commit an assault with a firearm the natural and probable consequence of which was murder. Matthews admitted that he knew his confederates would shoot Purnell, but did not admit that he acted with malice aforethought (either express or implied). As in *Offley*, petitioner could have intended to commit an assault with a firearm with an intent to injure but not kill. For that reason,

9

we reject respondent's argument that Matthews harbored express intent to kill.[3]  Because petitioner demonstrated he is not ineligible for resentencing as a matter of law, the trial court prejudicially erred in denying his petition without appointing counsel.  The trial court was required to issue an order to show cause and to hold a hearing at which the prosecution bears the "burden of proving petitioner's ineligibility for resentencing beyond a reasonable doubt, unless such hearing is waived ([citation])."  (*People v. Flores* (2022) 76 Cal.App.5th 974, 992.)

Finally, respondent correctly points out that courts are divided as to whether preliminary hearing testimony may be considered to assess a petitioner's eligibility for resentencing.  In *People v. Davenport* (2021) 71 Cal.App.5th 476, 482, the court held that a resentencing court cannot rely on evidence testified to at a preliminary hearing absent a stipulation that the evidence formed a factual basis for a plea.  In contrast, *People v. Perez* (2020) 54 Cal.App.5th 896, review granted December 9, 2020, S265254, held that the preliminary hearing transcript is part of the record of conviction and may be considered to assess prima facie eligibility.  (*Id*. at pp. 905–907, review granted.)  Respondent argues that it is unnecessary to rely on the preliminary hearing testimony because petitioner's statements at

---

[3] Although respondent correctly notes that in our now-vacated opinion, we stated that petitioner offered no basis to conclude his conviction was based on the natural and probable consequences doctrine.  Upon remand from our Supreme Court, petitioner, now with the assistance of counsel, persuasively argues that his conviction potentially could have been based on the natural and probable consequences doctrine.

the plea "indicate that he acted with express malice, i.e, with 'a deliberate intention to take away the life of a fellow creature.' "

We agree with respondent to the extent respondent argues that petitioner's admissions forming the factual basis of his plea were substantially the same as the evidence presented at the preliminary hearing. Specifically, petitioner admitted at his plea hearing that he drove two confederates knowing that they intended to shoot Purnell. Following petitioner's testimony, the court found there was a "factual basis for the plea of guilty." However, we disagree that petitioner admitted he acted with express malice. Petitioner testified only that he knew his confederates would shoot at rival gang members not that he intended to kill the rival gang members. Petitioner's admissions were insufficient to exclude a natural and probable consequences theory and the case must be remanded for additional proceedings. (§1172.6, subd. (c).)

## DISPOSITION

The order denying Donald Matthews' petition for resentencing is reversed. The case is remanded to the trial court to issue an order to show cause and to conduct further proceedings as required by Penal Code section 1172.6, subdivision (d).

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.          CHANEY, J.

11