Filed 7/17/24  P. v. Castillo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082186 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF004916) |
| MIGUEL ANGEL CASTILLO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Monica Lepe-Negrete, Judge.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A Sevidal and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Miguel Angel Castillo appeals from a judgment following his conviction on one count of second degree murder under Penal Code[1] section 187, subdivision (a). Castillo argues the conviction should be reversed because the trial court prejudicially erred in not instructing the jury on the lesser included offense of voluntary manslaughter. In his view, the record contains evidence showing he was provoked or acted in imperfect self-defense. The Attorney General contends an instruction on the lesser included offense was not warranted because neither provocation nor imperfect self-defense was supported by substantial evidence. We agree and affirm the conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of August 5, 2021, two friends, K.A. and G.G., were at G.G.'s grandmother's house. Castillo lived across the street and invited them over to his house. K.A. did not know Castillo well having only spent time with him on two or three occasions in the week prior to August 5, 2021. Each time K.A. was with Castillo, G.G. was present as Castillo and G.G. were involved in a romantic relationship. K.A. had a previous conflict with Castillo's sister and was uncomfortable being at Castillo's house. To make K.A. feel more comfortable, Castillo suggested inviting C.L., the victim, over to join them because K.A. and C.L. had been friends since elementary school. Castillo and C.L. had been together earlier that day at C.L.'s grandmother's house. K.A. agreed, and Castillo called C.L. and invited him over.

After C.L. arrived at Castillo's house, the group drank beer and took Xanax. At some point, K.A. and C.L. left in Castillo's mother's car to drive around Brawley. While they were driving, C.L. asked K.A. to take him somewhere. K.A. said she felt uncomfortable taking C.L. where he wanted to

---

[1]    All further statutory references are to the Penal Code.

go because she had been drinking, did not have her driver's license, and had seen many police officers around. K.A. said that they should go back to Castillo's house. C.L. was upset because K.A. would not take him where he wanted to go. During this conversation, C.L. pulled a gun out from under the passenger side seat and pointed it at K.A., threatening to shoot her. After C.L. put the gun away, K.A. and C.L. returned to Castillo's house.

Once back at Castillo's house, C.L. stayed in the car while K.A. went inside and told G.G. that C.L. had pointed a gun at her and that she wanted to go home. Castillo was in the room and heard K.A. tell G.G. about the gun incident in the car. In response, when C.L. eventually joined the group inside, Castillo said he wanted to talk to C.L. outside. Castillo and C.L. went out into the backyard while K.A. and G.G. stayed inside the house. K.A. later testified that she heard C.L. and Castillo arguing outside. After only a few seconds, K.A. went out into the backyard where she saw C.L. backed against a fence, hunched over, and clutching his upper left chest while Castillo stood in front of him with a kitchen knife in his hand. K.A. did not see Castillo stick a knife into C.L.'s chest, but K.A. reported that Castillo appeared to be enraged and that C.L. was not making any aggressive movements towards Castillo or attempting to fight back.

C.L. appeared to be in pain and immediately left Castillo's house while clutching his chest. C.L. ran a few blocks back to the home where he lived with his grandmother, M.V. M.V. heard yelling coming from her front yard. She investigated the noise and found C.L. leaning against a parked vehicle in their neighbor's driveway. When M.V. asked what was happening, C.L. replied, "Nah, nah, I'm dying, I'm dying." C.L. then collapsed in the front yard. M.V. called 911.

3

A responding officer arrived and found C.L. lying on the ground next to a telephone pole. C.L. was having a hard time breathing and was bleeding from his chest and mouth. C.L. identified Castillo as the one who had done this to him. Shortly after, C.L. died from a single stab wound that penetrated his heart. A responding officer found a steak knife in C.L.'s left shirt pocket.

Castillo was charged with first degree murder (§ 187, subd. (a)). At trial, the jury acquitted him of first degree murder and convicted him of second degree murder (§ 187, subd. (a)).

## DISCUSSION

Castillo contends that the court committed prejudicial error by failing to instruct the jury on the lesser included offense of voluntary manslaughter based on provocation or imperfect self-defense. We disagree. As we explain *post*, substantial evidence was not presented at trial that Castillo was provoked or acted with the unreasonable belief in the need to defend himself. Thus, we conclude that the trial court properly instructed the jury.

A. *Applicable Law and Standard of Review*

Our high court has settled that in a criminal case the trial court must instruct the jury on all general principles of law relevant to the issues raised by the evidence regardless of whether the instruction was requested. (*People v. Booker* (2011) 51 Cal.4th 141, 181.) If the evidence raises a question of whether all of the elements of the charged offense were satisfied and the question is material enough to merit consideration by the jury, it is error for a trial court not to instruct on a lesser included offense. (See *People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)

However, the trial court should instruct on a lesser included offense only when there is substantial evidence on which a jury could reasonably conclude that the defendant committed the lesser uncharged offense as

4

opposed to the greater charged offense. (*People v. Nelson* (2016) 1 Cal.5th 513, 538 (*Nelson*).) The substantial evidence requirement is not satisfied by just any type of evidence regardless of its weakness. (See *ibid*.) Evidence that is minimal, insubstantial, or would require the jury to make speculative inferences about the case is insufficient to require an instruction on a lesser included offense. (See *People v. Simon* (2016) 1 Cal.5th 98, 132.)

We review de novo the question of whether the trial court improperly failed to instruct on a lesser included offense (*People v. Souza* (2012) 54 Cal.4th 90, 113), and in deciding the sufficiency of the evidence to support the instruction, we view the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) The courts should not evaluate the credibility of witnesses when deciding if there is substantial evidence of a lesser offense. (*Breverman*, *supra*, 19 Cal.4th 162.)

B. *Voluntary Manslaughter Based on Heat of Passion*

" 'Murder is the unlawful killing of a human being . . . with malice aforethought.' (§ 187, subd. (a).) 'Manslaughter is the unlawful killing of a human being without malice.' (§ 192, subd. (a).) Manslaughter is a lesser included offense of murder, and a defendant who commits an intentional and unlawful killing but who lacks malice is guilty of voluntary manslaughter. Heat of passion is one of the mental states that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." (*Nelson*, *supra*, 1 Cal.5th at p. 538; see *Breverman*, *supra*, 19 Cal.4th at p. 154.) Heat of passion is "caused by legally sufficient provocation that causes a person to act, not out of rational thought but out of unconsidered reaction to the provocation." (*People v. Beltran* (2013) 56 Cal.4th 935, 942.)

5

Our Supreme Court has explained that a heat of passion theory of voluntary manslaughter has two components, an objective component and a subjective component. (*People v. Moye* (2009) 47 Cal.4th 537, 549 (*Moye*).) Under both elements, provocation may occur over a period of time (*People v. Wharton* (1991) 53 Cal.3d 522, 571–572) and may be anything that arouses intense fear, anger, or jealousy. (*People v. Fenenbock* (1996) 46 Cal.App.4th 1688, 1704 (*Fenenbock*).)

We look first at the subjective component. Our high court has explained that to prove the subjective element, the defendant "must be shown to have killed while under 'the actual influence of a strong passion' induced by such provocation." (*Moye, supra*, 47 Cal.4th at p. 550; see *Nelson, supra*, 1 Cal.5th at p. 539.) The court emphasized that heat of passion is not satisfied when the defendant is provoked then later kills. (*Nelson*, at p. 539.)

Castillo argues that he confronted C.L. immediately upon learning of C.L.'s threat to K.A. Additionally, K.A. testified that she heard Castillo and C.L. arguing. When K.A. went outside, Castillo appeared to be "enraged" and looked "mad and angry." This evidence suggests that Castillo was provoked at the time he killed C.L. Therefore, Castillo did provide some evidence that he satisfied the subjective element for heat of passion.

But, even if we presume Castillo's reason was actually obscured as a result of a strong passion, the record does not reflect sufficient evidence that a reasonable person would feel provoked to respond with that level of passion under these circumstances.

As previously noted, to satisfy the objective element, the defendant's heat of passion must be due to "sufficient provocation." (*Moye, supra*, 47 Cal.4th at p. 550.) The provocation must be caused by the victim. (*Id.* at pp. 549–550.) Provocation is legally sufficient when such provocation would

6

induce a person of average disposition to react as a result of passion and not from judgment. (*Nelson, supra*, 1 Cal.5th at p. 539.) Heat of passion is sufficient to negate malice because a person in this state simply reacts from emotion due to the provocation without exercising sound deliberation or judgment. (*Ibid.*)

There is no evidence that C.L. directly provoked feelings of intense fear, anger or jealousy in Castillo. (*Fenenbock, supra*, 46 Cal.App.4th at p. 1704.) Castillo contends that C.L. being armed and aggravated after threatening to shoot K.A. in the car serves as a basis for proving provocation. However, the record does not contain any evidence that C.L. directed any of his threats to or aggravation with K.A. at Castillo. Instead, when K.A. told G.G. and Castillo about what had happened with C.L. in the car, C.L. remained outside. When C.L. did reenter the house, there is no evidence that he came inside brandishing a gun or making threats towards anyone in the group. Rather, C.L. rejoined the group and Castillo immediately asked to talk to C.L. outside.

Additionally, the evidence shows that Castillo lacked an emotional connection with K.A. and that he was not present when C.L. made threats to K.A. in the car. Castillo and K.A. were practically strangers having only spent time together on two or three occasions, with their only real connection to each other being their mutual friend G.G. When Castillo stabbed C.L., K.A. had only known Castillo for less than a week. While K.A. admitted to being scared when C.L. threatened her with a gun in the car, once back in Castillo's home K.A. did not ask either Castillo or G.G. for help or express any continuing concern for her safety. Rather, K.A. simply asked to go home. And, ultimately, she did not even insist on leaving immediately; instead, she decided to remain at Castillo's house. Thus, K.A., the person at whom C.L.'s

threat was directed, did not appear to be significantly emotionally affected by C.L.'s actions.  Castillo was only a third party to the situation.  Without further evidence, we cannot say a reasonable person in his shoes would have felt particularly inflamed by the information that K.A. shared.

Furthermore, the situation in its entirety lacked a sense of urgency. C.L.'s threat to K.A. happened while they were alone in a car and away from Castillo's house.  Thus, C.L.'s threat to K.A. occurred well before either Castillo or G.G. were aware of it.  When K.A. informed G.G. and Castillo of the threat, C.L. remained outside Castillo's house.  Instead of immediately pursuing C.L., Castillo waited until C.L. returned inside before asking to talk with him.  Under these circumstances, where the threat was made to someone with whom Castillo did not share a close relationship, no current threat existed at the moment Castillo argued he was provoked, the victim of the threat, K.A., was not unduly upset about it, and C.L. was known to be armed, we cannot say a person of average disposition exercising sound deliberation would be induced to react rashly and instigate a confrontation. (*Nelson*, *supra*, 1 Cal.5th at p. 539.)  Therefore, we conclude there was insufficient evidence in the record to warrant a voluntary manslaughter instruction based upon heat of passion.

C. *Voluntary Manslaughter Based on Imperfect Self-Defense*

Imperfect self-defense also reduces murder to voluntary manslaughter. (*People v. Soto* (2018) 4 Cal.5th 968, 970.)  When the trier of fact finds that a defendant killed another person because the defendant actually, but unreasonably, believed they were in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice, the mental state required for murder.  (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1048.)

Therefore, the defendant cannot be convicted of a crime greater than voluntary manslaughter. (*Ibid.*)

Castillo makes two arguments to support that he acted in imperfect self-defense. First, Castillo contends that C.L. was armed and became angry when he confronted C.L. about the threat made to K.A. Second, Castillo contends that after he stabbed C.L., and the perceived threat of C.L.'s anger had subsided, Castillo did not continue to pursue C.L. showing that his actions were only defensive.

First, we consider Castillo's argument that evidence of C.L. being armed and angry was sufficient to cause Castillo to unreasonably fear for his life and act in imperfect self-defense. To satisfy imperfect self-defense, the defendant's fear must be of *imminent* danger to life or great bodily injury. (*People v. Steskal* (2021) 11 Cal.5th 332, 345.)

Castillo does not present any evidence that C.L.'s anger after being confronted led him to actually believe his life was in imminent peril. Additionally, while there was evidence that C.L. was armed with both a gun and steak knife on August 5, 2021, the record does not indicate that C.L. took out either weapon during his interaction with Castillo, much less brandished one or the other in a menacing or threatening manner. In fact, the responding officer found the steak knife in the breast pocket of C.L.'s shirt, which suggests that C.L. never removed the knife from his pocket or attempted to use it against Castillo during their confrontation. No gun was found on C.L.'s person. Further, Castillo relies on the presence of methamphetamine in C.L.'s system to emphasize that C.L. was acting "aggressive and angry" as a result of the drugs. However, there is no indication in the record that Castillo knew of C.L.'s drug use at the time of the stabbing, so there was no basis for Castillo to have a heightened concern

9

about C.L.'s behavior.  Without further factual support, we cannot conclude that C.L.'s anger, possession of weapons, or drug use caused Castillo to believe that he had to stab C.L. to defend against imminent peril or great bodily injury.  (*People v. Smith* (2018) 4 Cal.5th 1134, 1166.)

Additionally, the scene K.A. described when she walked outside and observed C.L. and Castillo suggests that C.L. was put in a disadvantaged position for ambush.  Even if C.L. was angry about being confronted by Castillo, within seconds of going outside, Castillo had backed C.L. up against a fence and then stabbed him.  The nature of this confrontation does not support the conclusion that Castillo was acting from a position of defense.

We also are not persuaded by Castillo's argument that the fact that he did not pursue C.L. shows that his actions were solely defensive.  Castillo did not provide any authority stating that the decision not to pursue a victim as they flee from a scene is a sufficient basis for giving an instruction on voluntary manslaughter based on imperfect self-defense.  Castillo may have not pursued C.L. following the stabbing for a number of reasons.  Absent any authority or further factual findings, we do not find Castillo's decision to not pursue C.L. alone a sufficient basis to require instruction.

Thus, we conclude the record did not contain sufficient evidence of provocation or imperfect self-defense to support a voluntary manslaughter instruction.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.

11